T.C. Memo. 2003-323


UNITED STATES TAX COURT


DAVID A. DEMETREE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

DAVID A. DEMETREE AND DEBORAH DEMETREE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20833-96, 20834-96.     November 24, 2003.


<u>Kenton V. Sands</u>, for petitioners.

<u>Stephen R. Takeuchi</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


FOLEY, <u>Judge</u>:  The issues for decision are:  (1) Whether David A. Demetree (David) failed to report income relating to 1983, 1984, 1985, 1986, 1987, 1988, 1989, and 1991; and (2) whether David and Deborah Demetree (Deborah) failed to report income relating to 1992.

FINDINGS OF FACT

In 1964, David married Michelle Demetree (Michelle).
Between 1966 and 1973, David and Michelle had four children.
During the early 1970s, David, a licensed real estate broker,
opened and operated a property management firm, David Demetree
Associates - Realtors.

David and Michelle separated in 1979. In order to devote
most of his time to contentious divorce proceedings, in 1980
David closed his property management firm. In that year, he also
transferred 797 State Road 434 (797 property) to Arthur and Naomi
Demetree (Arthur and Naomi), his parents, 205 San Sebastian Court
to Walter Pemberton, his friend, and the Brahman Inn to Jeanette
Hinkle, his sister. In 1983, 1984, 1985, 1986, 1987, 1990, and
1991, Arthur and Naomi reported rental income relating to the 797
property, but in 1988, 1989, and 1992 David received the rental
income. In addition, David made the mortgage payments and
retained the rental income relating to 205 San Sebastian Court
until the lender foreclosed on the property. With respect to the
Brahman Inn, Demetree and Associates supervised the collection
and deposit of rents, while an onsite manager handled the day-to-
day operations (e.g., preparation of monthly summaries,
collection of rents, and payment of expenses).

In 1981, David and Michelle divorced. The following year
David married Deborah. Deborah had custody of a daughter from a

previous marriage, and in 1983, David was awarded sole custody of his four children. Although they struggled financially on Deborah's salary as a full-time insurance adjuster, David stayed at home to care for the five children and perform domestic duties.

Prior to and during the years in issue, David had a close relationship with Arthur, Naomi, and Ms. Hinkle. David relied heavily on their generosity to supplement Deborah's salary. Arthur and Naomi regularly gave David and his family large gifts. They gave two homes to David, $900,000 in trust for David's children, annual $10,000 gifts to petitioners and each of David's children, automobiles to each of petitioners' children, and weekly gifts of cash and food to petitioners. They also made substantial loans to David documented with numerous promissory notes. Upon David's failure to repay some of these loans, Arthur and Naomi obtained a $300,000 judgment against him. Yet they continued to transfer significant amounts of money to petitioners. In addition, Ms. Hinkle lent David funds from the Brahman Inn business account. She documented these loans with promissory notes and upon David's failure to repay some of these loans obtained a judgment against him.

From the early 1970s through his death in 1991, Arthur, a successful real estate developer and broker, operated Demetree and Associates, a commercial property management sole

proprietorship. Demetree and Associates' principal business activities were the leasing and management of commercial warehouses owned by partnerships in which Arthur was a partner. The total management responsibilities relating to Demetree and Associates were minimal (e.g., the collection of rents and supervision of repairs). From 1983 through 1991, David occasionally assisted Arthur by performing services for Demetree and Associates. David also signed, pursuant to a power of attorney, Arthur's name on Demetree and Associates' business checks and deposit slips, including checks payable to himself or to third parties on his behalf. Arthur did not deduct the amounts he transferred to David, issue David Forms W-2, Wage and Tax Statements, or issue Forms 1099-MISC, Miscellaneous Income. Arthur and Naomi reported the income attributable to Demetree and Associates on the Schedules C, Profit or Loss From Business, accompanying their 1983, 1984, 1985, and 1986 joint Federal income tax returns.

In 1986, Arthur and Naomi lent David funds to purchase a one-third interest in a partnership formed to build North Lane Plaza (NLP), a strip mall. The following year, Arthur and Naomi also lent David funds to start and operate Scooper's Ice Cream (Scooper's) in one of NLP's stores. Scooper's produced losses during all its years of operation until David sold it in 1989. In 1987, 1988, 1989, and 1992, David claimed net operating loss

deductions relating to NLP and Scooper's. From 1986 through 1990, David managed NLP and reported on his 1990 return $109,000 of compensation relating to his management activities. In that year, David transferred his one-third interest to the other partners.

In 1987, Demetree and Associates employed Julia Lloyd as a full-time property manager. She was responsible for collecting rents, preparing monthly rental summaries, and assisting David in securing tenants and negotiating leases for NLP.

Following Arthur's death in 1991, David began managing the properties formerly managed by his father. Ms. Lloyd worked for David in the same capacity that she had for Arthur. David reported the income relating to his property management activities on the Schedules C accompanying his 1991 and 1992 returns and claimed a rental loss deduction relating to 1992.

In 1996, Ms. Lloyd asked David to terminate her so that she would be eligible to collect unemployment benefits. When David refused, she retaliated by filing a complaint with the local government authorities alleging David's business use of a residential condominium. She also contacted respondent, alleged that David had taken funds from Demetree and Associates and failed to report such funds to the Internal Revenue Service, and prepared ledgers documenting the alleged improprieties. Respondent then initiated a criminal investigation of David and

seized all of David's records and those relating to Demetree and Associates. In 1997, after respondent seized the records, Ms. Lloyd terminated her employment relationship with David Demetree and Associates Realtors. In 2000, respondent ended the criminal investigation.

From 1983 through 1991, while petitioners were married, Deborah filed separate income tax returns. David did not file returns relating to 1983 through 1985. He delinquently filed his 1986 through 1989 returns on January 4, 1993, and his 1991 return on January 26, 1993. Petitioners delinquently filed their 1992 return on October 19, 1993.

By notice of determination (notice), dated June 25, 1996, respondent determined deficiencies, additions to tax, and penalties relating to 1983, 1984, 1985, 1986, 1987, 1988, 1989, and 1991. The deficiencies totaled $197,823; the section 6651(a)(1),[1] 6653(a), 6654(a), and 6661 additions to tax totaled $80,303; and the section 6662 penalties totaled $10,594. On June 25, 1996, respondent sent petitioners a second notice in which he determined a $4,040 deficiency and an $808 section 6662 penalty relating to 1992.

By amendment to answer filed June 14, 2001, respondent, after analyzing seized bank statements, checks, and deposit

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

tickets, revised his determinations relating to 1984, 1985, 1986, 1988, 1989, 1991 and 1992. The increases in the deficiencies totaled $145,010, the additions to tax totaled $41,028.40, and the penalties totaled $1,820.60. With respect to 1983[2] and 1987, respondent determined decreases in the deficiencies totaling $5,935 and additions to tax totaling $4,875.75.

On September 25, 1996, petitioners, while residing in Longwood, Florida, filed petitions with this Court. On April 29, 1997, the Court granted their motion to consolidate the two cases.

OPINION

I.  Burden of Proof

Petitioners contend that the direct and indirect income reconstruction methods that respondent used to determine the deficiencies in his notices were arbitrary and excessive. We disagree. David had a duty, but failed, to maintain adequate financial records relating to most of the years in issue. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Accordingly, respondent's use of the direct and indirect income reconstruction

---

[2] At trial respondent discovered that the revised deficiency for 1983 in his amendment to answer should have been increased rather than decreased. In his brief, respondent asks the Court to rely on the original deficiency in the notice relating to 1983. We grant respondent's request on brief because it does not prejudice petitioners (i.e., petitioners were put on notice of the deficiency and additions to tax, and the request does not raise any new issues). See Rule 41(a); Foman v. Davis, 371 U.S. 178, 182 (1962).

methods was appropriate, respondent's determinations were not arbitrary or excessive, and petitioners bear the burden of going forward.  See Merritt v. Commissioner, 301 F.2d 484, 486 (5th Cir. 1962), affg. T.C. Memo. 1959-172; Schroeder v. Commissioner, 40 T.C. 30, 33 (1963).

Respondent concedes that, pursuant to Rule 142(a), he bears the burden of proof on matters relating to the increases in the deficiencies pleaded in his amendment to answer.  With respect to all of the remaining matters, our conclusion is unaffected by who bears the burden of proof.[3]  Accordingly, we need not address the parties' burden of proof contentions.

## II.  Respondent's Income Determinations

Respondent contends that David failed to report income he received from Demetree and Associates and property he had transferred to family members and friends.  Petitioners contend that the amounts they received were gifts and loans and that David's transfers of properties were bona fide transactions.

### A.  Demetree and Associates

Respondent contends that all of the income earned by Demetree and Associates should have been attributed to David because he, and not Arthur, controlled the business.  Respondent asserts that:  David performed the managing and leasing activities relating to Demetree and Associates; Arthur was never

---

[3]  Sec. 7491 is inapplicable because the examination of petitioners' returns began before the statute's effective date.

present in the office; David routinely signed Arthur's name; and Arthur, who was in his seventies during the years in issue, was unable to manage Demetree and Associates. In the alternative, respondent contends that the amounts petitioners received from Demetree and Associates were compensation for services. We disagree.

David did not control Demetree and Associates. See Crowley v. Commissioner, 34 T.C. 333, 345 (1960) (holding that business income is taxable to the person who owns and controls the business). Petitioners, both of whom were credible witnesses, testified that, while Deborah worked, David performed domestic duties and was a full-time care provider to their five children. David merely assisted Arthur, who made the major business decisions. Arthur successfully ran Demetree and Associates for more than 10 years before David began assisting him, he continued to report the business income on his returns, and he was listed as the owner or broker on the leases and sales agreements. The only contrary evidence was the testimony of Ms. Lloyd, who was not credible. Finally, the facts that David signed Arthur's name using a power of attorney and Arthur was in his seventies during the years in issue are of little significance.

Nor are we persuaded that the amounts that David received from Demetree and Associates were compensation for services rendered. Instead, the testimony and documentary evidence establish that Arthur and Naomi made gifts and loans from

Demetree and Associates to David and his family. David and Ms. Hinkle's testimony established that the disbursements were not made or intended to be made for any services rendered and that David was under no obligation to perform services. See Bogardus v. Commissioner, 302 U.S. 34, 36-37 (1937) (holding that the controlling factor to distinguish between a gift and compensation is the intent of the payor). Rather, the transfers to David were consistent with Arthur and Naomi's established pattern of making frequent and substantial gifts and loans to David and his family. Accordingly, we reject respondent's determinations relating to 1983, 1984, 1985, 1986, 1987, 1988, 1989, and prior to Arthur's death in 1991. David, however, failed to report income relating to his 1991 and 1992 property management activities. See sec. 61(a); James v. United States, 366 U.S. 213, 219 (1961). Therefore, we sustain respondent's determinations relating to those years.

B. The Brahman Inn

Respondent contends that the amounts Ms. Hinkle transferred to David were compensation for his management services related to the Brahman Inn. David and Ms. Hinkle's testimony established that the amounts he received were loans and that the management responsibilities relating to the Brahman Inn were handled by an onsite manager and supervised by Demetree and Associates. Accordingly, we reject respondent's determinations.

C. David's Property Transfers

Respondent contends that the rental income, relating to 205 San Sebastian Court and the 797 property transferred by David, is properly attributable to David. David is indeed liable for the taxes relating to the rental income from 205 San Sebastian Court. In 1980, David transferred 205 San Sebastian Court to Walter Pemberton. Prior to the bank's foreclosing on the property, however, David continued to make the mortgage payments and retained all of the rental income. Even though David transferred legal title of 205 San Sebastian Court, David remained the beneficial owner of the property. Lucas v. Earl, 281 U.S. 111 (1930); Serianni v. Commissioner, 80 T.C. 1090, 1104 (1983), affd. 765 F.2d 1051 (11th Cir. 1985). Arthur and Naomi gave David the rental income from the 797 property relating to 1988, 1989, and 1992, and David did not retain beneficial ownership of the property. Accordingly, we sustain respondent's determinations relating to 205 San Sebastian Court and reject respondent's determinations relating to the 797 property.

D. North Lane Plaza and Scooper's Ice Cream

Respondent determined that David failed to report compensation income from NLP and Scooper's relating to 1986, 1987, 1988, 1989, 1991 and 1992. Petitioners contend that these funds were withdrawn to reimburse David for expenditures he made on behalf of NLP and Scooper's. We agree with respondent. The funds withdrawn were compensation relating to management services

David rendered on behalf of NLP and Scooper's. See sec. 61(a); James v. United States, supra. Accordingly, respondent's determinations are sustained.

E. Interest Income

Respondent determined that petitioners failed to report interest income relating to 1986, 1987, 1988, 1989, 1991, and 1992. We sustain respondent's determinations relating to David's accounts (i.e., interest earned in 1986, 1987, 1988, 1989, 1991, and 1992), and Deborah's accounts (i.e., interest earned in 1992).

III. Petitioners' Claimed Loss Deductions

There is no evidence to support petitioners' claimed 1987, 1988, 1989, and 1992 net operating loss deductions or 1992 rental loss deduction. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Accordingly, respondent's determinations are sustained.

IV. Self-Employment Income

Respondent determined that petitioners were liable, pursuant to section 1401, for tax on self-employment income relating to all the years in issue. We hold that, consistent with our findings, petitioners are liable for self-employment tax relating to income from NLP, Scooper's, and David's property management activities relating to 1991 and 1992. See sec. 1402(a) and (b).

V. Additions to Tax and Penalties

Respondent determined additions to tax pursuant to sections 6651(a)(1), 6654(a), and 6661. Section 6651(a)(1) provides an

addition to tax for failure to file a tax return in a timely manner, unless such failure was due to reasonable cause and not due to willful neglect. There was no reasonable cause for the delay in filing the returns, and, thus, David is liable for the section 6651(a)(1) additions to tax. See, e.g., Higbee v. Commissioner, 116 T.C. 438, 447-448 (2001). Section 6654(a) provides an addition to tax for failure to pay estimated income tax. David filed no returns and made no estimated tax payments relating to 1983, 1984, and 1985 and, thus, is liable for those additions to tax. See, e.g., Niedringhaus v. Commissioner, 99 T.C. 202, 222-223 (1992). Section 6661 provides for an addition to tax for substantial understatements reduced by the portion for which there is substantial authority or adequate disclosure. David's understatements were not based on substantial authority or adequately disclosed, and, thus, David is liable for those additions to tax. See, e.g., Cluck v. Commissioner, 105 T.C. 324, 340 (1995).

Respondent also determined additions to tax pursuant to section 6653(a) and accuracy-related penalties pursuant to section 6662(a). Petitioners' failure to keep records and file timely and accurate returns was due to negligence. See, e.g., Higbee v. Commissioner, supra at 449; Niedringhaus v. Commissioner, supra at 222. Accordingly, petitioners are liable for those additions to tax and accuracy-related penalties.

Contentions we have not addressed are irrelevant, moot, or meritless.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.