T.C. Memo. 2012-245

UNITED STATES TAX COURT

OMAR S. ABARCA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13701-11.                    Filed August 27, 2012.

Omar S. Abarca, pro se.

<u>Bradley C. Plovan</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, <u>Judge</u>:  Respondent determined deficiencies in petitioner's 2007

and 2008 Federal income tax of $15,257[1] and $54,862, respectively.  Respondent

---

[1]All dollar amounts are rounded to the nearest dollar.

**[*2]** also determined section 6662(a)[2] accuracy-related penalties for 2007 and 2008 of $3,051 and $10,972, respectively.  Finally, respondent determined a section 6651(a)(1) failure to file addition to tax for 2008 of $8,555.  After concessions,[3] the issues for decision are:

(1) whether petitioner is entitled to deductions of $39,402 and $50,491 for disputed expenses reported on Schedule C, Profit or Loss From Business, for 2007 and 2008, respectively.  We hold that he is not;

(2) whether petitioner is entitled to deductions of $94,603 and $83,874 for disputed mortgage interest expenses reported on Schedule E, Supplemental Income and Loss, for 2007 and 2008, respectively.  We hold that he is not;

(3) whether petitioner is entitled to a deduction of $14,419 for disputed Schedule E real property tax expenses for 2008.  We hold that he is not;

(4) whether petitioner failed to report discharge of indebtedness income of $105,599 for 2008.  We hold that he did not;

---

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3]Petitioner stipulated that he failed to report interest income of $123 for 2007 and $18 for 2008.  Petitioner also stipulated that he paid mortgage interest of $12,321 and real estate tax of $4,531 for one of his rental properties in Lake Zurich, Illinois, as opposed to $17,083 in mortgage interest and $166 in real property tax reported on his 2008 tax return.

**[*3]**    (5) whether petitioner is liable for section 6662(a) accuracy-related penalties

for 2007 and 2008.  We hold that he is; and

(6) whether petitioner is liable for the section 6651(a)(1) failure to file

addition to tax for 2008.  We hold that he is.

FINDINGS OF FACT

At the time the petition was filed, petitioner resided in Maryland.  In both

2007 and 2008 petitioner lived in Boston, Massachusetts, and worked at a hospital

as a clinical systems developer.

Petitioner began investing in rental real estate in and around Chicago, Illinois,

during 2002.  He also started a real estate brokerage, ABA National Realty, LLC, in

2005, of which he was the sole owner.  Petitioner was a real estate broker and

participated in rental real estate activities in Chicago during both 2007 and 2008.

The parties stipulated that petitioner's rental real estate activities in 2007 and 2008

were passive activities in which he did not materially participate.

1. Schedule E Deductions Claimed

Petitioner claimed mortgage interest expense deductions for various rental

properties on Schedule E.  The following mortgage interest expense deductions are

in dispute for 2007 and 2008:

**[*4]**

| Property | Mortgage Interest Claimed 2007 | 2008 |
|---|---|---|
| 21 E. Huron St. #2206 | $33,672 | $19,561 |
| 21 E. Huron St. #2901 | 39,487 | --- |
| 2428 Avalon Ct. | 21,444 | 24,763 |
| 652 Nantucket Way | --- | 8,484 |
| 704 Blue Ridge[1] | --- | 18,193 |
| 243 N. Garfield | --- | 8,111 |

[1]The full addresses for many properties were not provided.

Petitioner is not the person named as the borrower for any of the mortgages on these properties. Christopher Hart is the person named on the mortgages for 21 E. Huron St. #2206 and 2428 Avalon Ct. Mark Faruzzi is the person named on two mortgages for 21 E. Huron St. #2901, and Elsa Abarca is the person named on the mortgage for 652 Nantucket Way. The borrower information was not provided for the mortgages for 704 Blue Ridge and 243 N. Garfield. Although he was not the borrower for any of these mortgages, petitioner made certain mortgage payments for 21 E. Huron St. #2206, 21 E. Huron St. #2901, and 2428 Avalon Ct., as discussed infra.

Petitioner entered into separate partnership agreements with Mr. Hart and Mr. Faruzzi for operation of the rental properties at 21 E. Huron St. #2206, 21 E.

[*5] Huron St. #2901, and 2428 Avalon Ct.[4]  The partnership agreements appear to be form agreements intended for use in the United Kingdom.  The partnerships were formed because petitioner was attempting to buy additional properties but had an insufficient amount of credit available to do so.

Each partnership agreement provided that petitioner would contribute the initial partnership capital and that the other partner would use his credit to obtain a loan in order to purchase a rental property identified in the partnership agreement.  It was unclear whether titles to the purchased properties were ever contributed to the corresponding partnerships, but it was established that petitioner did not hold title to any of the partnership properties.  Each partnership agreement provided that petitioner would pay a percentage of the expenses associated with the rental property as well as manage the property.  Finally, each partnership agreement also provided that both partners would share the profits or losses for each partnership year in proportion to their partnership interests.  No evidence that partnership formalities were followed was produced, and petitioner did not properly account

---

[4]No evidence of a partnership agreement with Elsa Abarca was presented.

**[\*6]** for their existence on his 2007 and 2008 tax returns. Rather, petitioner filed his tax returns as if he owned each property directly.[5]

Petitioner did not hold title to the 652 Nantucket Way, 704 Blue Ridge, and 243 N. Garfield properties previously listed. In addition, petitioner did not hold title to a property at 3010 Ilene. However, on his 2008 tax return petitioner deducted $14,419 in real property tax paid on these properties. Whether petitioner actually paid the real property tax is discussed infra.

2. Schedule C Deductions Claimed

Petitioner claimed deductions for car and truck use, rent, travel, and meals and entertainment on Schedules C for both 2007 and 2008. While petitioner substantiated (and respondent accordingly allowed) portions of the car and truck expense deductions for both years, respondent disallowed the following deductions: (1) car and truck expenses of $9,095 and $8,677 for 2007 and 2008, respectively; (2) rent expenses of $17,190 and $19,797 for 2007 and 2008, respectively; (3) meals and entertainment expenses of $1,442 and $2,721 for 2007 and 2008, respectively; and (4) travel expenses of $11,675 and $19,296 for 2007

---

[5]Petitioner may have treated only a portion of each property as personally owned by him; however, it is difficult to discern from the available evidence.

**[*7]** and 2008, respectively, resulting from petitioner's travel between Chicago and Boston. Other information regarding the claimed expenses is discussed infra.

3. Discharge of Indebtedness

On June 30, 2008, petitioner sold a property at 201 N. Westshore Drive #707, Chicago, Illinois. At the time of sale, J.P. Morgan Chase (J.P. Morgan) held two mortgages on the property with balances due totaling $471,787 for which petitioner was liable.[6] With the proceeds of the sale, petitioner was able to pay J.P. Morgan only $105,599 less than the balances due on its mortgages.[7] The unpaid amount was "charged off" at some unestablished point before July 12, 2010, by an unestablished entity.

On September 12, 2008, J.P. Morgan transferred the loans to the National Attorney Network for servicing of the loans (i.e., the right to collect payments from petitioner). The notification supplied to petitioner upon the transfer of the

---

[6]Although the parties stipulated that J.P Morgan held the loans at the time of sale, it appears the loans were actually held by Washington Mutual, which later merged with J.P. Morgan. For the sake of simplicity we will disregard the existence of Washington Mutual and treat it and J.P. Morgan as one entity (going by the name of J.P. Morgan) at all relevant times. This action has no effect on the outcome of the case.

[7]Later correspondence between petitioner and various third parties mentions only one loan. It is not clear whether: (1) the loans were consolidated; (2) one loan was satisfied as a result of the property sale or potential later payments; or (3) the parties just informally referred to the two outstanding amounts as one loan.

**[*8]** loans to the National Attorney Network stated: "The transfer of servicing of your loan does not affect any term or condition of your mortgage documents, other than terms directly related to the servicing of your loan."

The loans were eventually transferred to Litton Loan Servicing for collection. On August 24, 2010, Litton Loan Servicing mailed a letter to petitioner which stated: "Although this loan has been charged off, you still remain obligated for the repayment of the debt." The letter also indicated that petitioner had previously sent correspondence to Litton Loan Servicing on August 16, 2010.

4. Additional Information

Petitioner timely filed his 2007 income tax return[8] but did not file his 2008 income tax return until April 20, 2010. Both returns were prepared by an accountant working for MSLC Management, Ltd. Respondent issued a notice of deficiency for both years on March 11, 2011, and petitioner timely filed a petition contesting the deficiencies, penalties, and addition to tax.

---

[8]The parties have stipulated the 2007 return was timely filed even though petitioner did not sign the return until August 3, 2009.

[*9]                                   OPINION

I.  <u>Burden of Proof</u>

Generally, taxpayers bear the burden of proving, by a preponderance of the evidence, that the determinations of the Commissioner in a notice of deficiency are incorrect.  Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  Deductions are a matter of legislative grace, and a taxpayer bears the burden of proving entitlement to any claimed deductions.  Rule 142(a)(1); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992).  Petitioner has not argued that respondent bears the burden of proof with respect to the issues discussed below.

II.  <u>Whether Petitioner Is Entitled to Deductions of $39,402 and $50,491 for Disputed Schedule C Expenses for 2007 and 2008, Respectively</u>

Section 162 allows a deduction for all ordinary and necessary business expenses paid or incurred during the taxable year in carrying on any trade or business.  The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact.  <u>Commissioner v. Heininger</u>, 320 U.S. 467, 475 (1943).  In addition, section 212 allows a deduction for all the ordinary and necessary expenses paid or incurred for the production or collection of income and for the management, conservation, or maintenance of property held for the production of income.

**[*10]** Taxpayers are required to maintain records sufficient to establish the amounts of allowable deductions and to enable the Commissioner to determine the correct tax liability. Sec. 6001; Shea v. Commissioner, 112 T.C. 183, 186 (1999). No deduction is allowed for personal, living, or family expenses. Sec. 262(a). Certain expenses specified in section 274 are subject to strict substantiation rules. No deductions under section 162 or 212 shall be allowed for, among other things, travel expenses, entertainment expenses, gifts, and expenses with respect to "listed property" as defined in section 280F(d)(4) "unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement": (1) the amount of the expense or other item; (2) the time and place of the travel, entertainment, or use, or date and description of the gift; (3) the business purpose of the expense or other item; and (4) in the case of entertainment or gifts, the business relationship to the taxpayer of the recipients or persons entertained. Sec. 274(d).

Passenger automobiles and any other property used as a means of transportation are generally "listed property" as defined by section 280F(d)(4). Secs. 274(d)(4), 280F(d)(4)(A)(i) and (ii). Accordingly, with certain exceptions (none of which petitioner has shown he meets), deductions for car and truck expenses must satisfy the strict substantiation requirements of section 274. The

**[\*11]** heightened substantiation requirements of section 274 also apply to meals and entertainment expenses as well as travel expenses.  Sec. 274(d); Bogue v. Commissioner, T.C. Memo. 2011-164, slip op. at 10.

While petitioner did introduce some records and receipts for purposes of substantiating his claimed car and truck, meals and entertainment, and travel expense deductions, these items fail to demonstrate any business purpose of the expenses. Rather, the records provide only information regarding where the expenses were incurred and the amounts of the expenses.  Accordingly, we find that petitioner has failed to prove his entitlement to any deductions for these expenses over the amounts respondent already allowed.

Section 162(a)(3) provides for a deduction for ordinary and necessary rental expenses incurred in carrying on a trade or business.  However, petitioner failed to introduce any evidence that the rental expenses he deducted qualified as business expenses deductible under section 162.  Petitioner likewise failed to introduce any evidence to prove the amounts of any rental expenses actually paid.

Considering the foregoing facts and law, we find that petitioner has failed to prove he was entitled to deduct any of the Schedule C expenses in dispute.

**[*12]** III. <u>Whether Petitioner Is Entitled to Deductions of $94,603 and $83,874 for Disputed Schedule E Mortgage Interest Expenses for 2007 and 2008, Respectively</u>

The general rule is that "There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness." Sec. 163(a). Petitioner claims to have paid during 2007 and 2008 interest on six mortgages for which he was not the obligor. Respondent disallowed all of petitioner's claimed mortgage interest expense deductions for these six properties. In support of the deductions, petitioner has provided partnership agreements purporting to show that he owned a percentage interest in partnerships that managed[9] three of the properties: 21 E. Huron St. #2206, 21 E. Huron St. #2901, and 2428 Avalon Ct. No partnership agreements regarding the remaining three properties were produced.

The parties stipulated that petitioner made the following mortgage interest payments for the three partnership properties: (1) $5,988 for 2428 Avalon Ct. in 2007; (2) $5,996 for 2428 Avalon Ct. in 2008; (3) $5,888 for 21 E. Huron St. #2206 in 2007; and (4) $12,423 for 21 E. Huron St. #2901 in 2007. In addition, petitioner introduced his bank account statements from 2007 and 2008 in an

---

[9]It was not clear whether the partnerships actually held title to the properties.

**[\*13]** attempt to prove he paid additional amounts of mortgage interest for these three properties.

Petitioner made no attempt to prove he paid mortgage interest for the other three mortgages--652 Nantucket Way, 704 Blue Ridge, and 243 N. Garfield--for which no partnership agreements were introduced, and we have found no evidence of such payments in the record. We therefore find petitioner failed to prove his entitlement to deductions for any mortgage interest payments for these three properties.

Even if we assumed petitioner made all the payments he claimed to have made with respect to the 21 E. Huron St. #2206, 21 E. Huron St. #2901, and 2428 Avalon Ct. properties (including and exceeding those payments stipulated), we would still find that he is not entitled to the deductions he claimed for mortgage interest paid for the three properties.

Although section 163 generally allows deductions for interest on indebtedness, the indebtedness must generally be an obligation of the taxpayer, and not an obligation of another. Song v. Commissioner, T.C. Memo. 1995-446, 1995 Tax Ct. Memo LEXIS 446, at *6 (citing Golder v. Commissioner, 604 F.2d 34, 35 (9th Cir. 1979), aff'g T.C. Memo. 1976-150, Smith v. Commissioner, 84 T.C. 889, 897 (1985), aff'd without published opinion, 805 F.2d 1073 (D.C. Cir. 1986), and

**[*14]** <u>Hynes v. Commissioner</u>, 74 T.C. 1266, 1287 (1980)).  Petitioner stipulated that he was "not the person named as the borrower for any of the mortgages."

An exception to the general rule that interest paid on an obligation of the taxpayer is deductible only by that taxpayer is found in section 1.163-1(b), Income Tax Regs.  The regulation provides in part that "Interest paid by the taxpayer on a mortgage upon real estate of which he is the legal or equitable owner, even though the taxpayer is not directly liable upon the bond or note secured by such mortgage, may be deducted as interest on his indebtedness."  We found that the taxpayer in <u>Song</u> was not entitled under section 1.163-1(b), Income Tax Regs., to deduct mortgage interest paid on a property because the taxpayer was not the legal or equitable owner of the property.  In that case a brother and sister entered into an agreement under which the brother would borrow money and hold title to a property, but the sister would have the "full responsibility" to pay the mortgage on the property.  We held that the sister was not entitled to a deduction for the mortgage interest paid because she failed to establish that she was the legal or equitable owner of the property.  We also noted that the agreement entered into by the brother and sister was questionable.

As was the case for the taxpayer in <u>Song</u>, we find that petitioner has failed to establish that he was the legal or equitable owner of 21 E. Huron St. #2206, 21 E.

**[*15]** Huron St. #2901, or 2428 Avalon Ct. No evidence suggests that petitioner is the legal owner of any of these properties, and he testified that his name was not on "the back of the title of the properties". Petitioner also offered scant evidence that he could be considered an equitable owner of any of the properties. It was unclear whether any of the properties had actually been contributed to any of the partnerships formed between petitioner and Mr. Hart or petitioner and Mr. Faruzzi.

Similar to the agreement in Song, other aspects of the partnerships at issue in this case are questionable; petitioner failed to properly account for their existence on his 2007 and 2008 tax returns (instead treating the properties as if he personally owned them) and offered no evidence that any partnership formalities were ever followed. Considering the foregoing facts and law, we find that petitioner is not entitled to the claimed mortgage interest expense deductions for 21 E. Huron St. #2206, 21 E. Huron St. #2901, or 2428 Avalon Ct.

IV. Whether Petitioner Is Entitled to a Deduction of $14,419 for Disputed Schedule E Real Property Tax Expenses for 2008

Section 164 allows a deduction for certain taxes, including State and local real property taxes, regardless of whether they were paid or incurred in a trade or business. Tschetter v. Commissioner, T.C. Memo. 2003-326, slip op. at 21. In general, taxes are deductible only by the person upon whom they are imposed. See

[*16] Tuer v. Commissioner, T.C. Memo. 1983-441, 1983 Tax Ct. Memo LEXIS 345, at *2-*3; sec. 1.164-1(a), Income Tax Regs.  However, we have held that taxpayers who do not hold legal title to property but who establish they are equitable owners of the property are entitled to deduct property tax paid by them for the property.  Daya v. Commissioner, T.C. Memo. 2000-360, slip op. at 46; Trans v. Commissioner, T.C. Memo. 1999-233, slip op. at 16.

Petitioner did not hold title to the 704 Blue Ridge, 243 N. Garfield, 3010 Ilene, or 652 Nantucket Way properties.  On his 2008 tax return petitioner deducted $14,419 in real property tax paid on these properties.  Petitioner has offered no evidence that he was the equitable owner of any of the properties or that he actually paid the real property tax in question.[10]  As a result we find that petitioner is not entitled to deduct the $14,419 in real property tax paid with respect to these four properties.

V. Whether Petitioner Failed To Report Discharge of Indebtedness Income of $105,599 for 2008

Respondent determined that petitioner failed to report $105,599 of discharge of indebtedness income for 2008, claiming that J.P. Morgan forgave the debt that

_____

[10]While petitioner did introduce his 2007 and 2008 bank account statements, the hundreds of withdrawals and deposits are not sufficiently identified for us to determine whether he actually paid the real property tax on the four properties at issue.

[*17] petitioner owed to it after the sale of the 201 N. Westshore Drive #707 property. Respondent argues: (1) that petitioner did not dispute the discharge of indebtedness income in his petition and therefore the issue is deemed conceded by petitioner under Rule 34(b)(4); and (2) that the evidence and stipulated facts show J.P. Morgan canceled $105,599 of petitioner's indebtedness. We disagree with both of respondent's arguments.

Regarding respondent's first argument, Rule 34(b)(4) provides that a petition shall contain--

> Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability. The assignments of error shall include issues in respect of which the burden of proof is on the Commissioner. Any issue not raised in the assignments of error shall be deemed to be conceded. Each assignment of error shall be separately lettered.

In explaining why he disagreed with respondent's determinations, petitioner stated in his petition--

> The auditor closed my case two days before I sent the supporting documentation. We were exchanging e-mails and apparently he did not read the attachments that I sent because they had the same title. I am unsure if the IRS email system deletes e-mail with the same name automatically or it was a personal preference and he assumed all messages with the same title had the same content. The last communication I had with the auditor was when he told me that my case was forwarded to Technical Services and he would not consider any documentation from that point forward.

**[\*18]** Petitioner is a nonattorney acting pro se.  Given the facts of this case, we find petitioner's statement is sufficient to satisfy Rule 34(b)(4) by raising the issue of substantiation, and thus we reject respondent's argument.  See Gray v. Commissioner, 138 T.C. __, __ (slip op. at 7) (Mar. 28, 2012) ("All claims in a petition should be broadly construed so as to do substantial justice, and a petition filed by a pro se litigant should be liberally construed.").

Regarding respondent's second argument, we find that the preponderance of the evidence shows that the $105,599 debt was not discharged in 2008. Respondent claims that the loan to petitioner was discharged in 2008 and that J.P. Morgan issued petitioner a Form 1099-C, Cancellation of Debt.  However, respondent did not introduce any Form 1099-C into evidence.  The only evidence that the debt was discharged was a letter which stated that the loan had been charged off.[11]  Notably, no evidence was introduced regarding when the debt was charged off; and the same letter (dated August 24, 2010) informed petitioner that he "still remain[ed] obligated for the repayment of the debt".  Given these facts, we reject respondent's second argument and conclude that petitioner is not liable for

---

[11]The letter did not state which entity had charged off the debt, and it was not clear from other evidence introduced that J.P. Morgan was actually the entity that charged off the debt, as respondent claims.

**[*19]** any deficiency arising from respondent's determination that petitioner failed to report $105,599 of discharge of indebtedness income for 2008.

VI.  Section 6662(a) Accuracy-Related Penalties

Respondent determined that petitioner is liable for the 20% accuracy-related penalty under section 6662(a) and (b)(1) for negligence or disregard of rules and regulations.  Negligence includes any failure to make a reasonable attempt to comply with the provisions of the Code, including any failure to maintain adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  Under section 7491(c), the Commissioner bears the burden of production with regard to penalties and must come forward with sufficient evidence indicating that it is appropriate to impose penalties.  See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  However, once the Commissioner has met the burden of production, the burden of proof remains with the taxpayer, including the burden of proving that the penalties are inappropriate because of reasonable cause or substantial authority under section 6664.  See Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447.

Respondent has met the burden of production, and petitioner acted negligently, with respect to the claimed Schedule C and Schedule E deductions because he failed to maintain adequate records to substantiate these deductions.

**[*20]** However, respondent has not met the burden of production, and petitioner is therefore not liable, for a penalty resulting from the discharge of indebtedness income respondent determined for 2008. This is in accordance with our previous finding that petitioner had no discharge of indebtedness income for 2008.

Pursuant to section 6664(c)(1), accuracy-related penalties under section 6662 do not apply to any portion of an underpayment for which a taxpayer establishes that he or she: (1) had reasonable cause; and (2) acted in good faith. Dunlap v. Commissioner, T.C. Memo. 2012-126, slip op. at 69. Whether a taxpayer has acted with reasonable cause and in good faith depends on the pertinent facts and circumstances, including efforts to assess the proper tax liability, the taxpayer's knowledge and experience, and the extent to which the taxpayer relied on the advice of a tax professional. Sec. 1.6664-4(b)(1), Income Tax Regs. "Generally, the most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Id.

Although petitioner claims to have followed the advice given to him by his tax adviser, he has made no attempt to establish that the reliance was reasonable. See Freytag v. Commissioner, 89 T.C. 849, 888 (1987), aff'd on another issue, 904 F.2d 1011 (5th Cir. 1990), aff'd, 501 U.S. 868 (1991); sec. 1.6664-4(b)(1), Income Tax Regs. We have previously held that

**[*21]** for a taxpayer to rely reasonably upon advice so as possibly to negate a section 6662(a) accuracy-related penalty determined by the Commissioner, the taxpayer must prove * * * that the taxpayer meets each requirement of the following three-prong test: (1) The adviser was a competent professional who had sufficient expertise to justify reliance, (2) the taxpayer provided necessary and accurate information to the adviser, and (3) the taxpayer actually relied in good faith on the adviser's judgment.

Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). Petitioner has failed to prove that he satisfied any of these three requirements.

While petitioner testified that he had used the same accountant for many years and supplied all relevant information, he failed to introduce any evidence regarding the accountant's expertise or showing that he actually supplied the accountant with necessary and accurate information. Petitioner testified that he discussed his partnership agreements with the accountant, although that seems unlikely given the fact that he did not account for the partnerships on his 2007 and 2008 tax returns. Petitioner made no other argument that he acted with reasonable cause and in good faith. Considering the facts, we hold petitioner is liable for the 20% accuracy-related penalty with respect to those deficiencies for which we have previously found him to be liable.

**[\*22]** VII.  <u>Section 6651(a)(1) Failure To File Addition to Tax for 2008</u>

Section 6651(a)(1) provides for an addition to tax for failure to timely file Federal income tax returns (determined with regard to any extension of time for payment) unless the taxpayer shows that such failure was due to reasonable cause and not willful neglect.  <u>Mendes v. Commissioner</u>, 121 T.C. 308, 320 (2003). Regarding the amount of the addition to tax, section 6651(a)(1) provides that "there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate".

Petitioner filed his 2008 return on April 20, 2010, more than five months after it was due.  Petitioner has not demonstrated any reasonable cause for the late filing of the return, nor has he introduced any evidence that he requested or was granted an extension of time to file his 2008 return.  Accordingly, we find that petitioner is liable for the maximum 25% section 6651(a)(1) addition to tax.

VIII.  <u>Conclusion</u>

We find petitioner is not entitled to deduct any of the disputed Schedule C or E expenses.  We also find that petitioner did not fail to report $105,599 in discharge of indebtedness income for 2008.  Further, we find petitioner liable for a

**[*23]** 25% addition to tax under section 6651(a)(1) as well as a 20% section 6662(a)

accuracy-related penalty.

To reflect the foregoing and concessions by the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.