T.C. Summary Opinion 2016-1

UNITED STATES TAX COURT

HAZEM GARADA AND NOHA ELGHOSEIN, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3726-14S.                          Filed January 7, 2016.

Hazem Garada and Noha Elghosein, pro sese.

<u>Andrew K. Glover</u>, for respondent.

SUMMARY OPINION

BUCH, <u>Judge</u>:  This case was heard pursuant to section 7463 of the Internal

Revenue Code in effect when the petition was filed.[1]  Under section 7463(b), the

_____

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code (Code) in effect at all relevant times, and all Rule references are to
the Tax Court Rules of Practice and Procedure.  All monetary amounts are

(continued...)

decision to be entered in this case is not reviewable by any other court, and this opinion may not be treated as precedent for any other case.

The Commissioner issued a notice of deficiency determining the following deficiencies and penalties with respect to Mr. Garada and Ms. Elghosein's Federal income tax for 2010, 2011, and 2012.

| Year | Deficiency | Penalty sec. 6662(a) |
|------|-----------|----------------------|
| 2010 | $19,262 | $3,852 |
| 2011 | 4,881 | 976 |
| 2012 | 3,592 | 718 |

After concessions by both parties, only a few issues remain. For 2010 the issues are whether Mr. Garada and Ms. Elghosein received unreported income, and if so, whether they may claim offsetting deductions; whether they may deduct expenses relating to their interest income; and whether they may deduct their real property taxes paid on their behalf. For each year in issue, we must decide whether Ms. Elghosein is entitled to relief from joint and several liability and whether Mr. Garada and Ms. Elghosein are liable for an accuracy-related penalty under section 6662(a).

---

[1](...continued)
rounded to the nearest dollar.

On the basis of the evidence presented at trial, we find that Mr. Garada and Ms. Elghosein failed for the most part to show that the Commissioner's determinations are incorrect. For 2010 Mr. Garada and Ms. Elghosein received unreported income, and they failed to provide sufficient records to substantiate offsetting deductions. Likewise, they failed to provide evidence of expenses relating to their interest income beyond those expenses for which the Commissioner already allowed a deduction. However, they may deduct their real property taxes because they constructively paid them. Mr. Garada and Ms. Elghosein are liable for a section 6662(a) accuracy-related penalty for 2010 only if the computations reveal an underpayment that is due to a substantial understatement of income tax. For 2011 and 2012 Mr. Garada and Ms. Elghosein are not liable for section 6662(a) accuracy-related penalties because the Commissioner failed to meet his burden of production. Lastly, Ms. Elghosein is not entitled to relief from joint and several liability for any year in issue because she did not present sufficient evidence justifying relief.

## Background

Mr. Garada and Ms. Elghosein were married during 2010, 2011, and 2012, the years in issue. They are still married and have been living together continuously since then.

During 2010 Fast Fuel Gas Station (Fast Fuel) operated through Noha Enterprises, Inc., which was organized as a C corporation in 2006 but elected to be taxed as an S corporation in 2008. Ms. Elghosein was the sole shareholder of Noha Enterprises, but she did not participate in running Fast Fuel. Instead, she worked as a teacher. Mr. Garada was the treasurer of Noha Enterprises, and he was also the manager of Fast Fuel.

As the manager of Fast Fuel, Mr. Garada ran its operations. He was the main cashier, often working more than one shift in a day. He also traveled to neighboring cities to purchase merchandise for resale at Fast Fuel. Because Fast Fuel provided 24-hour service, Mr. Garada hired employees for those times when he was unavailable to work at Fast Fuel. On behalf of Noha Enterprises, Mr. Garada prepared Forms W-2, Wage and Tax Statement, for the employees, but he did not prepare a Form W-2 for himself for 2010.

Mr. Garada also wrote checks from Noha Enterprises' account. In 2010 Mr. Garada wrote himself a $10,000 check from Noha Enterprises' account, noting "auto expenses" on the memo line. Twice that year he wrote checks from Noha Enterprises' account to the County of Fairfax for real property taxes on his marital home. Those two checks totaled $7,741.

In addition to operating Fast Fuel, Mr. Garada held an offshore bank account for part of 2010. He opened the account in 2009 and transferred $1,110,000 from his account at a U.S. bank to his account at the National Bank of Dubai.[2] In 2010 Mr. Garada traveled to Dubai, United Arab Emirates, and withdrew the funds along with the accumulated interest. The total amount he withdrew equaled $1,175,723.

Mr. Garada and Ms. Elghosein timely filed their joint Form 1040, U.S. Individual Income Tax Return, for 2010. Mr. Garada prepared the return on the basis of his understanding of the Code. On their return they claimed as itemized deductions for taxes paid sales taxes of $1,450 and real property taxes of $8,902. They also reported $55 of taxable interest; however, they did not include the interest from the National Bank of Dubai account or the $10,000 payment from Noha Enterprises to Mr. Garada.

Mr. Garada filed Noha Enterprises' Form 1120S, U.S. Income Tax Return for an S Corporation, for 2010. Noha Enterprises did not deduct the $10,000 payment to Mr. Garada or the payments to the County of Fairfax for Mr. Garada and Ms. Elghosein's real property taxes.

---

[2]The parties stipulated that Mr. Garada transferred $1,100,000 to the National Bank of Dubai, but banking records in evidence show that the amount was $1,110,000.

In May 2011 Mr. Garada and Ms. Elghosein amended their return by filing a joint Form 1040X, Amended U.S. Individual Income Tax Return, for 2010. Among other adjustments, they increased their itemized deductions for taxes paid by $1,998 to include their personal property tax payments on their vehicles. They maintained that their taxable interest was $55; however, they reported that after an exchange rate conversion, they received $53,021 of interest income from the National Bank of Dubai. They took the position that after unspecified expenses, the remaining $24,818 was "tax excludable".

Mr. Garada and Ms. Elghosein filed joint Forms 1040 for 2011 and 2012.

The Commissioner examined their returns for 2010, 2011, and 2012 and proposed adjustments for each year. Before the Commissioner issued a notice of deficiency, Mr. Garada and Ms. Elghosein made various payments toward their potential liabilities. Specifically, they paid part of the tax resulting from the proposed adjustments for 2010 and all of the income tax resulting from the proposed adjustments for 2011 and 2012; they did not pay any of the penalties. The Commissioner issued a notice of deficiency on February 7, 2014, determining deficiencies in Mr. Garada and Ms. Elghosein's income tax for 2010, 2011, and 2012 and erroneously including the tax adjustments for 2011 and 2012 that Mr. Garada and Ms. Elghosein had already paid.

For the 2010 return the Commissioner conducted a bank deposits analysis. Among other adjustments, the Commissioner increased Mr. Garada and Ms. Elghosein's income by $10,000. The Commissioner also increased their taxable interest income by $53,021, allowing them to exclude $12,702 from their interest income, which included a $9,000 currency loss. Further, the Commissioner disallowed itemized deductions of $6,904 for taxes paid. Specifically, the Commissioner disallowed the real property tax deduction of $8,902; however, the Commissioner allowed the personal property tax deduction of $1,998 from the amended return, netting disallowed itemized deductions for taxes paid of $6,904. For each year in issue the Commissioner's determinations included accuracy-related penalties under section 6662(a).

While residing in Virginia, Mr. Garada and Ms. Elghosein timely petitioned for redetermination. For 2010 they challenge the Commissioner's determination to include $10,000 in income. They argue that if the payment is included in income, they should be entitled to deduct it on Noha Enterprises' Form 1120S. Rather than arguing that the interest from the National Bank of Dubai account is "tax excludable" as they did on their amended return, they challenge the Commissioner's disallowance of deductions for their interest expenses. They also challenge the Commissioner's disallowance of their itemized deductions for their

taxes paid. For each year in issue, Mr. Garada and Ms. Elghosein dispute the accuracy-related penalty under section 6662(a).

Subsequently, Mr. Garada and Ms. Elghosein amended their petition for "full preservation of innocent spouse rule" and requested relief from joint and several liability for Ms. Elghosein. Mr. Garada filled out Form 8857, Request for Innocent Spouse Relief, alleging that Ms. Elghosein should be entitled to relief because he prepared the tax forms that she only signed. Mr. Garada, not Ms. Elghosein, signed the request for relief. Afterwards, Ms. Elghosein resubmitted that request with her signature.

Trial was held in Washington, D.C., on October 30, 2014. Ms. Elghosein did not appear at trial. Mr. Garada argued that they could deduct the $10,000 payment because it was a reimbursement for travel expenses. He presented three documents to show his expenses for their interest income: a printout of an email discussing fixed interest rates; a British Airways ticket for January 18, 2009; and a December 26, 2009, confirmation for a January 19, 2010, flight to Dubai, United Arab Emirates, for $977. Mr. Garada also argued that he should be able to deduct his real property taxes because Noha Enterprises did not deduct them on its Form 1120S.

The Commissioner argued that Mr. Garada and Ms. Elghosein were liable for a section 6662(a) accuracy-related penalty for 2010 because their underpayment was due to a substantial understatement of income tax. For 2011 and 2012 the Commissioner argued that they were liable for section 6662(a) accuracy-related penalties because they conceded and paid their deficiencies for those years. The Commissioner offered no further evidence regarding penalties for 2011 and 2012. The Commissioner orally moved to dismiss the request for relief from joint and several liability for failure to prosecute. We will issue an order denying that motion.

Discussion

I.    Burden of Proof

In general, the Commissioner's determinations in a notice of deficiency are presumed correct, and taxpayers bear the burden of proving otherwise.[3] Although the burden may shift to the Commissioner under section 7491(a) if certain requirements are met, Mr. Garada and Ms. Elghosein have not claimed that the burden has shifted, and the record does not support shifting the burden to the Commissioner.

---

[3]Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

The taxpayer bears the burden of proving entitlement to any deduction.[4]

Additionally, the taxpayer must maintain sufficient records "to show whether or

not such person is liable for tax".[5] And in some instances, heightened

substantiation requirements may apply.[6]

II.   Omitted Income

In unreported income cases, the Commissioner has the burden to come

forward with some evidence linking the taxpayer to the income-producing

activity.[7] Where a taxpayer fails to maintain sufficient records of taxable income,

the Commissioner may reconstruct the taxpayer's income in accordance with a

method that clearly reflects the full amount of income received.[8] This Court has

long established that a bank deposits analysis is one such method.[9] This method

"assumes that all money deposited in a taxpayer's bank account during a given

---

[4]Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

[5]Sec. 6001.

[6]See, e.g., sec. 274(d).

[7]Robertson v. Commissioner, T.C. Memo. 2014-143, at *4.

[8]Sec. 446(b); see DiLeo v. Commissioner, 96 T.C. 858, 882 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

[9]Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977).

period constitutes taxable income".[10]  The Commissioner does not have to prove a likely source of that income.[11]  However, if the Commissioner knows of any nontaxable source or deductible expense, then he must take it into account.[12]  The taxpayer bears the burden of showing that a deposit came from a nontaxable source.[13]

The Commissioner conducted a bank deposits analysis and determined that Mr. Garada did not report the $10,000 payment he received from Noha Enterprises.  Although Mr. Garada and Ms. Elghosein take the position that this payment was a nontaxable reimbursement for expenses that Mr. Garada incurred on behalf of Noha Enterprises, they did not present any evidence to substantiate their expenses.  Instead, they rely on Mr. Garada's uncorroborated testimony that the payment was for reimbursement of travel expenses.

---

[10]Clayton v. Commissioner, 102 T.C. 632, 645-646 (1994).

[11]Tokarski v. Commissioner, 87 T.C. at 76-77 (holding that proof of linkage may be required in cases involving alleged illegal source of income).

[12]Clayton v. Commissioner, 102 T.C. at 645-646.

[13]Tokarski v. Commissioner, 87 T.C. at 77.

Certain expenses are subject to strict substantiation under section 274(d) before they can be deducted.[14] These include those expenses relating to travel.[15] To meet the strict substantiation requirement, a taxpayer must substantiate the travel expense through adequate records or by sufficient evidence corroborating the taxpayer's own statement.[16] The evidence must include the amount of the expense, the time and place the expense was incurred, the business purpose of the travel, and the business relationship of the taxpayer to any other benefited person.[17] To substantiate by adequate records, a taxpayer must provide an account book, a log, trip sheets, or similar records prepared contemporaneously with the expenditure, as well as documentary evidence of certain expenditures.[18] Documentary evidence includes receipts or similar evidence.[19]

Mr. Garada and Ms. Elghosein did not provide adequate records to meet the strict substantiation requirements for travel expenses. They did not maintain a

---

[14]Sec. 274(d).

[15]Sec. 274(d).

[16]Sec. 274(d).

[17]Sec. 274(d).

[18]Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985).

[19]Sec. 1.274-5T(c)(2), Temporary Income Tax Regs., supra.

contemporaneous mileage log or any other documentary evidence to demonstrate that they were entitled to a deduction. Accordingly, Mr. Garada and Ms. Elghosein failed to prove that Mr. Garada was reimbursed for travel expenses, and the $10,000 must be included in income.

Mr. Garada and Ms. Elghosein argue in the alternative that Noha Enterprises can deduct the $10,000 as a travel expense on its Form 1120S. But this argument fails for the same reason; like Mr. Garada and Ms. Elghosein, Noha Enterprises did not substantiate the expenses.

III.   Taxable Interest

Section 212 allows taxpayers to deduct ordinary and necessary business expenses paid or incurred during the taxable year for the production of income. Taxpayers must maintain records that are sufficient to establish the amount of the deduction.[20]

Although Mr. Garada and Ms. Elghosein reported on their Form 1040X that their interest income from the National Bank of Dubai account was "tax excludable", they concede that the interest income is taxable. Instead of arguing for exclusion, they argue that they may deduct their expenses in generating that income. The Commissioner, on the other hand, argues that Mr. Garada and Ms.

[20]Sec. 6001.

Elghosein may not exclude amounts greater than what he has already allowed in the notice of deficiency. In the notice of deficiency the Commissioner allowed Mr. Garada and Ms. Elghosein to exclude $12,702 from their interest income, including a $9,000 currency loss.

Mr. Garada and Ms. Elghosein did not provide sufficient records to warrant a deduction for additional expenses. Although Mr. Garada and Ms. Elghosein provided a printout of an email discussing fixed interest rates for the account and plane tickets to Dubai, United Arab Emirates, to substantiate the cost of traveling to their bank to withdraw the funds, they failed to show that their total expenses exceeded the amount that the Commissioner already allowed. Mr. Garada and Ms. Elghosein are not entitled to deduct additional expenses for the production of their taxable interest.

IV.    Real Property Taxes

Section 164 allows taxpayers to deduct certain taxes paid within a taxable year. Real property taxes are one such tax.[21] "In general, taxes are deductible only

---

[21]Sec. 164(a)(1).

by the person upon whom they are imposed."[22] And taxpayers "generally cannot deduct taxes paid by another taxpayer."[23]

Mr. Garada and Ms. Elghosein take the position that they may deduct on their personal return the real property taxes paid by Noha Enterprises with respect to their marital home. The Commissioner argues that Mr. Garada and Ms. Elghosein may not deduct the real property taxes because Noha Enterprises paid them. In his closing the Commissioner informed the Court that he treated the payment of a personal expense by Noha Enterprise as a nontaxable distribution to Ms. Elghosein.

If this is a distribution, then it is a constructive distribution. And we have previously held that when an S corporation pays a personal expense of its shareholder, the shareholder receives a constructive distribution.[24] It also follows that for purposes of claiming the deduction, the shareholder is treated as constructively paying the obligation.

---

[22]Abarca v. Commissioner, T.C. Memo. 2012-245, at *15; sec. 1.164-1(a), Income Tax Regs. (flush language).

[23]See Ostrow v. Commissioner, 122 T.C. 378, 380 (2004), aff'd, 430 F.3d 581 (2d Cir. 2005); see also Deputy v. du Pont, 308 U.S. 488, 493-494 (1940); Rappaport v. Commissioner, T.C. Memo. 2006-87, 2006 WL 1083434, at *3.

[24]See Cavanaugh v. Commissioner, T.C. Memo. 2012-324; see also sec. 1.1361-1(l)(2)(i), Income Tax Regs.

Indeed, we have treated it as such. For example in <u>Peters, Gamm, West & Vincent, Inc. v. Commissioner</u>,[25] an S corporation paid legal fees for its shareholder.[26] The shareholder was not expected to repay the corporation, and the payment directly benefited the shareholder.[27] This Court held that when the corporation paid the legal fees for the shareholder, the shareholder was in constructive receipt of the distribution and "for purposes of claiming them as a deduction he has also constructively paid the legal fees."[28] As a result, the shareholder was able to deduct the legal fees as an ordinary and necessary expense paid or incurred for the production of income.[29]

---

[25]<u>Peters, Gamm, West & Vincent, Inc. v. Commissioner</u>, T.C. Memo. 1996-186, 1996 WL 182545, at *8; <u>see also</u> <u>Broad v. Commissioner</u>, T.C. Memo. 1990-317 (holding that shareholder was allowed a deduction after receiving a constructive dividend from the C corporation's payment of his personal obligations); <u>Berlin v. Commissioner</u>, T.C. Memo. 1961-194 (holding that shareholder was allowed to deduct the accrued interest following C corporation's payment of his loans).

[26]<u>Peters, Gamm, West & Vincent, Inc. v. Commissioner</u>, 1996 WL 182545, at *1, *8.

[27]<u>Peters, Gamm, West & Vincent, Inc. v. Commissioner</u>, 1996 WL 182545, at *8.

[28]<u>Peters, Gamm, West & Vincent, Inc. v. Commissioner</u>, 1996 WL 182545, at *8.

[29]<u>Peters, Gamm, West & Vincent, Inc. v. Commissioner</u>, 1996 WL 182545, at *8.

The Commissioner conceded that the payment was a nontaxable distribution to Ms. Elghosein from Noha Enterprises.  Accordingly, Mr. Garada and Ms. Elghosein have constructively paid the real property taxes and are entitled to the deduction.

## V.    Section 6662(a) Accuracy-Related Penalties

Section 6662(a) and (b) (1) and (2) imposes a 20% accuracy-related penalty on any portion of an underpayment of tax that is due to negligence, disregard of rules or regulations, or any substantial understatement of income tax.  These penalties do not apply to any portion of an underpayment for which a taxpayer establishes that he or she had reasonable cause and acted in good faith.[30]  The Commissioner bears the burden of production for these penalties before the burden shifts to taxpayers to prove that the penalty should not apply.[31]  For the Commissioner to meet that burden, the Commissioner must come forward with sufficient evidence to show that the imposition of the penalty was justified.[32]  The Commissioner argues that Mr. Garada and Ms. Elghosein are liable for accuracy-related penalties under section 6662(a) on the basis of a substantial understatement

---

[30]Sec. 6664(c)(1).

[31]See sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

[32]See sec. 7491(c); see also Higbee v. Commissioner, 116 T.C. at 447.

of income tax for 2010 and negligence or disregard of rules or regulations for 2011 and 2012.

A.    Substantial Understatement of Income Tax

An understatement of income tax is "substantial' when that understatement exceeds the greater of 10% of tax required to be shown on the return or $5,000.[33] However, if taxpayers have substantial authority for the tax treatment of an item, then the portion of the tax attributable to that item is not included in the understatement.[34]

In accordance with this opinion, Mr. Garada and Ms. Elghosein's exact underpayment for 2010 depends on the Rule 155 computations. If these computations establish a substantial understatement of income tax, then the Commissioner has met his burden of production. Further, Mr. Garada and Ms. Elghosein have not presented any evidence to show that they had substantial authority for the tax treatment of any of the items in issue. Accordingly, we sustain the penalty under section 6662(a) for 2010 only if the Rule 155 computations establish a substantial understatement of income tax.

---

[33]Sec. 6662(d)(1)(A).

[34]Sec. 1.6662-4(d)(1), Income Tax Regs.

B. <u>Negligence or Disregard of Rules or Regulations</u>

For 2011 and 2012, because the threshold for a substantial understatement of income tax is not met, the Commissioner instead argues that Mr. Garada and Ms. Elghosein were negligent or disregarded rules or regulations. The term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code, and the term "disregard" includes any careless, reckless, or intentional disregard.[35]

The Commissioner did not provide any evidence that the imposition of the penalty was justified for 2011 or 2012. The Commissioner did not show that Mr. Garada and Ms. Elghosein failed to keep adequate books and records or failed to properly substantiate the items in question for those years.[36] Instead, the Commissioner argues that because Mr. Garada and Ms. Elghosein conceded and paid their deficiencies for 2011 and 2012, they are liable for section 6662(a) accuracy-related penalties for negligence or disregard of rules or regulations. Although we may take concessions into account in determining whether the

---

[35]Sec. 6662(c).

[36]<u>See</u> sec. 7491(c); <u>see also</u> <u>Higbee v. Commissioner</u>, 116 T.C. at 447.

Commissioner has carried his burden,[37] the Commissioner's argument here is too broad. Conceding that a position is not allowable is not the same as conceding that it was taken negligently or with disregard of rules or regulations.[38] Accordingly, the Commissioner has not met his burden of production for the section 6662(a) penalties for 2011 and 2012, and on the record before us, we do not sustain the penalties for 2011 and 2012.

## VI.    Relief From Joint and Several Liability

Generally, married taxpayers may elect to file joint Federal income tax returns.[39] After making the election, each spouse is jointly and severally liable for the entire tax due for that year.[40] If certain requirements are met, section 6015 allows a taxpayer relief from joint and several liability. Except as otherwise provided, the requesting spouse bears the burden of proving that he or she is entitled to section 6015 relief.[41]

---

[37]Oria v. Commissioner, T.C. Memo. 2007-226.

[38]See Murphy v. Commissioner, T.C. Memo. 2006-243.

[39]Sec. 6013(a).

[40]Sec. 6013(d)(3).

[41]Rule 142(a); Alt v. Commissioner, 119 T.C. 306, 311 (2002), aff'd, 101 F. App'x 34 (6th Cir. 2004).

Ms. Elghosein is not entitled to relief under section 6015. Although Mr. Garada testified that he was in charge of filing the returns and that he was responsible for the items of income that the Commissioner disallowed, Ms. Elghosein did not provide any additional evidence that she is entitled to relief. Mr. Garada and Ms. Elghosein are still married and have continuously lived together. Ms. Elghosein did not appear at trial to testify or provide any other evidence that demonstrates that she meets the requirements for relief. Accordingly, Ms. Elghosein has not met her burden of showing that she is entitled to section 6015 relief.

VII. Conclusion

On the basis of our examination of the record before us and the parties' arguments at trial, we find that Mr. Garada and Ms. Elghosein failed for the most part to show that the Commissioner's determinations are incorrect. For 2010 Mr. Garada and Ms. Elghosein must include in income the $10,000 payment from Noha Enterprises. They are not entitled to deduct additional expenses relating to interest income. However, Mr. Garada and Ms. Elghosein are entitled to deduct their real property taxes. Mr. Garada and Ms. Elghosein are liable for a section 6662(a) accuracy-related penalty for 2010 if the computations reveal that they substantially understated their income tax. However, the Commissioner failed to

meet his burden for 2011 and 2012, and Mr. Garada and Ms. Elghosein are not liable for section 6662(a) accuracy-related penalties for those years. For each year in issue, Ms. Elghosein is not entitled to relief from joint and several liability.

To reflect the foregoing,

<u>An appropriate order will be issued,</u> <u>and decision will be entered under Rule</u> <u>155</u>.