T.C. Memo. 2006-87

UNITED STATES TAX COURT


JOEL RAPPAPORT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 10777-04.          Filed April 25, 2006.


<u>Martin A. Stoll</u>, for petitioner.

<u>Willie Fortenberry, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency of $47,650 in petitioner's Federal income tax for 2001 and additions to tax (1) for failure to file under section 6651(a)(1)[1] in the

---

[1] Section references are to the Internal Revenue Code as amended.  Rule references are to the Tax Court Rules of Practice and Procedure.

amount of $5,096.25; (2) for failure to pay tax under section 6651(a)(2) in the amount of $1,812; and (3) for failure to pay estimated tax under section 6654(a) in the amount of $786.40.

Less than a month before trial, petitioner submitted an income tax return for 2001 to respondent in which he reported more income than respondent had determined and deducted expenses that flowed through to his return from two S corporations. Respondent asserted in an amendment to answer filed 5 days before trial that petitioner's deficiency for 2001 is $168,424 and that he is liable for additions to tax of $42,106 under section 6651(a)(1) and $2,317 under section 6654(a).

After concessions,[2] the issues for decision are:

1.    Whether petitioner may deduct a greater amount of expenses flowing through to him from his S corporations than respondent allowed.  We hold that he may not.

2.    Whether petitioner is liable for the addition to tax for failure to timely file his 2001 return under section 6651(a)(1).  We hold that he is.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

---

[2]  Among other concessions, petitioner concedes he is liable for the addition to tax for failure to pay estimated tax under sec. 6654(a), and respondent concedes that petitioner is not liable for the addition to tax under sec. 6651(a)(2).

A.   Petitioner

Petitioner lived in Florida when he filed the petition. Petitioner graduated from New York University and received a master's degree from a second institution.  He is a certified public accountant (C.P.A.), and practices in Florida and New York.  He had specialized in taxation for about 40 years.  He represented taxpayers before the Internal Revenue Service (IRS) during 2001-04.

B.   Petitioner's Businesses

1.   Joel Rappaport & Co. and Rappaport, Steele & Co.

Petitioner is the sole owner and president of Joel Rappaport & Co., P.A. (JRC), a Florida corporation, and Rappaport, Steele & Co., P.C. (RSC), a New York corporation.  JRC and RSC performed tax, accounting, and return preparation services.

Petitioner performed services for JRC in 2001-04.  He received $160,000 per year in wages from JRC.  In April of each year from 1996 to 2004, petitioner signed annual reports for JRC and filed them with the secretary of state of Florida.  JRC timely filed employment tax returns for 2002-04.  Petitioner signed those returns.

RSC provided tax and accounting services.  RSC was profitable in 2001.  In 2001-04, John Glasner and Bob Steele (Steele) were RSC employees who provided accounting services and prepared tax returns for RSC clients.  Steele represented clients

before the IRS during those years. RSC timely filed employment tax returns for 2001-04. Petitioner signed all of those employment tax returns. RSC paid JRC $192,500 for services that petitioner performed in 2001.

2. Consulting for Business, Inc.

Petitioner's wife and two children owned a business called Consulting for Business, Inc. (CFB).[3] CFB provides marketing activities (e.g., direct mail services) to JRC and RSC. Petitioner has been president of CFB since its inception around 1995.

C. Petitioner's Illness

In June 2002, petitioner sought treatment at the Mayo Clinic for pain in his left leg and his back. The pain worsened in July 2002. He had difficulty walking in August 2002. Petitioner was soon diagnosed with multiple myeloma, which he was told is an incurable blood disorder. He received radiation therapy 22 times over a 45-day period beginning in September 2002. Petitioner changed medications several times because he had adverse reactions. From August 2002 to April 2004, the medication affected petitioner's personality and caused petitioner to have difficulty sleeping, bending, walking, and traveling.

---

[3] Apparently petitioner was not a shareholder of CFB. Exh. 18-P, General Ledger for Consultants for Business, Inc., refers to petitioner's wife, but not petitioner, as a CFB shareholder.

From July through December 2002, petitioner reduced the amount of his business travel and primarily worked from home. Petitioner used video conferencing to reduce stress and the need to travel. He worked an average of about 15 hours per week from September to November 2002, about 20 hours per week from November 2002 to August 2003, about 10 to 15 hours per week from August 2003 to March 2004, about 30 hours per week from March to November 2004, and about 40 hours per week after November 2004. Petitioner's income was fairly stable throughout 2002-04. As of the date of trial, no one associated with JRC or RSC knew about petitioner's illness.

D.   Income Tax Returns

   1.   Petitioner's Tax Return for 2000

Stan Hester (Hester), a JRC employee, prepared petitioner's Form 1040, U.S. Individual Income Tax Return, for 2000. JRC employed Hester in 2001, 2002, and until October 2003.

Petitioner signed his Federal income tax return for 2000 on February 12, 2002, and untimely filed it on a date not stated in the record. Petitioner reported in that return that he had received wages of $160,000 from JRC.

   2.   JRC's and RSC's Forms 1120S for 2001

On January 3, 2003, petitioner filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for 2001 for JRC and RSC.

3.   Petitioner's Tax Returns for 2001-04

On a date not stated in the record, petitioner received an extension to file his 2001 return on or before October 15, 2002. Petitioner did not file income tax returns for tax years 2002-04.

E.   Notice of Deficiency for Petitioner's Tax Year 2001 and the Pleadings in This Case

Respondent determined a deficiency in petitioner's income tax for 2001 on the basis of information reported by third parties. Respondent mailed the notice of deficiency to petitioner on March 22, 2004. Petitioner had not filed an individual income tax return for 2001 at that time.

Petitioner filed a petition in which he contends that he is entitled to deduct certain expenses. Petitioner faxed a Form 1040 for 2001 to respondent's Appeals Office less than a month before the trial of this case. He reported income of $317,525, which included amounts not previously reported to respondent by third-party payers. The $317,525 consisted of:  $160,000 of wages paid by JRC; $4,033 of interest; $4 of dividends; $25,613 of capital gains; and $127,875 from rent.

On his Form 1040 for 2001, petitioner deducted the following expenses that flowed through to him from JRC and RSC:

JRC

| | |
|---|---|
| Rent | $45,441 |
| Marketing | 41,335 |
| Professional fees | 16,008 |
| Auto rental and expenses | 20,893 |
| Total | 123,677 |

RSC

| | |
|---|---|
| Rent | $82,252 |
| New York apartment tax | 3,121 |
| Lodging | 8,419 |
| Professional fees | 18,037 |
| Transportation | 24,905 |
| Travel | 20,929 |
| Marketing | 141,707 |
| Management, staff, and administration | 192,500 |
| Interest | 36,392 |
| Total | 528,262 |

Respondent asked petitioner to substantiate the deductions that flowed through from JRC and RSC to his delinquent Form 1040 for 2001. Petitioner did not do so.

Respondent filed an amendment to answer. In it, respondent asserts that petitioner's 2001 deficiency and additions to tax were larger than respondent had determined in the notice of deficiency on the basis of the amount of income first reported to respondent in the Form 1040 petitioner had faxed to respondent. Respondent also asserted in the answer that, although requested to do so by respondent, petitioner did not provide documents substantiating any deductions for 2001.

OPINION

A.  Whether Petitioner May Deduct Various Expenses That CFB Paid for Him in 2001

Petitioner contends that he may deduct mortgage interest under section 163(h)(3), real estate tax under section 164(a)(1), and condominium fees under section 162(a) paid for him by CFB in 2001.  We disagree.  Petitioner may not deduct these items because they were paid by CFB, not petitioner.  See Doggett v. Commissioner, 275 F.2d 823, 827 (4th Cir. 1960), affg. T.C. Memo. 1958-176; Citizens Nat. Trust & Sav. Bank v. Welch, 119 F.2d 717, 719 (9th Cir. 1941); Kniffen v. Commissioner, 39 T.C. 553, 567 (1962); Budner v. Commissioner, T.C. Memo. 1984-542.  Petitioner disagrees and contends he can deduct CFB's payments because they were loans to him, which, because of the obligation to repay the loans, were constructively paid by him.  We disagree.

Petitioner introduced in evidence some pages from CFB's general ledger for 2001 that show that CFB routinely paid petitioner's personal expenses.  The balance sheet on CFB's Form 1120S for 2001 states that these payments were loans to petitioner.  However, neither those pages nor any other evidence show that petitioner is obligated to repay CFB.  Thus, petitioner has not shown that CFB's payments on his behalf were loans to him.

Petitioner contends that Budner v. Commissioner, supra, on which respondent relies, is distinguishable on two grounds.

First, in <u>Budner</u>, we held that a taxpayer (partner) may not deduct payments by a third party (a partnership) unless there is an arrangement for charging the partner. We found that there was no such arrangement in <u>Budner</u>. Petitioner contends that CFB's payment of his expenses was a loan to him, unlike the circumstances in <u>Budner</u>. We disagree because petitioner has not shown that he was obligated to repay CFB.

Second, in <u>Budner</u>, we found no evidence that the expenses the partnership paid for the taxpayer had not been deducted at the partnership level, and thus the expenses at issue could have been improperly deducted twice. <u>Id.</u> Petitioner testified and contends that CFB did not deduct the expenses it paid that are at issue in this case. We disagree. Petitioner is an experienced C.P.A. who should have known that he is required to keep and produce records to substantiate his claims. See sec. 6001. He did not offer CFB returns in evidence. He did not corroborate his testimony or explain how he knew that CFB did not deduct those items. Petitioner's attempt to distinguish <u>Budner</u> is without merit.

We conclude that petitioner may not deduct mortgage interest, real estate tax, and condominium fees that CFB paid in 2001.

B.    Whether Items Deducted on the Forms 1120S for 2001 for JRC
      and RSC Flow Through to Petitioner's Individual Tax Return

      1.    Background

JRC and RSC delinquently filed their Forms 1120S for 2001, and petitioner delinquently submitted his Form 1040 for 2001. In his Form 1040, petitioner reported flow-through expenses from JRC and RSC. Respondent disregarded those expenses in the amended answer because petitioner did not respond to respondent's request to substantiate them. After trial, this Court gave petitioner 4 months to provide respondent with substantiation of the flow-through items. Petitioner failed to do so.

      2.    Burden of Proof

Petitioner filed a motion to shift the burden of proof to respondent 2 months after the deadline for providing the additional substantiation. Petitioner contends that respondent bears the burden of proving the increased deficiency respondent asserted in the amendment to answer. Petitioner contends that respondent bears the burden of proof under Rule 142(a)(1) because the denial of deductions is a new matter which, if sustained, would increase the deficiency. We disagree.[4]

Respondent did not allow petitioner any deductions for 2001 in the notice of deficiency, the answer, or the amendment to

---

[4] Petitioner concedes he is taxable on the increased income reported on his Form 1040 for 2001. Thus, the burden of proof does not affect whether he is taxable on those amounts.

answer.  Petitioner claimed deductions in his Form 1040 for 2001, which he submitted after respondent filed the amendment to answer.  Thus, petitioner, not respondent, changed positions belatedly.  Petitioner's assertion that respondent bears the burden of disproving his belatedly claimed deductions is untenable; those deductions are not new matter under Rule 142(a).  See Comtek Expositions, Inc. v. Commissioner, 99 Fed. Appx. 343, 345-346 (2d Cir. 2004), affg. T.C. Memo. 2003-135; Widemon v. Commissioner, T.C. Memo. 2004-162.

Petitioner points out that the Commissioner asserted new matter in Hurst v. Commissioner, 124 T.C. 16 (2005), and Shea v. Commissioner, 112 T.C. 183 (1999).  Those cases are distinguishable because the taxpayers in those cases did not file returns after the notices of deficiency were issued.

Petitioner contends that respondent knew or should have known about the expenses of JRC and RSC which flowed through to petitioner because respondent had the Forms 1120S and Schedules K-1, Shareholder's Share of Income, Credits, Deductions, Etc., for JRC and RSC more than 14 months before respondent issued the notice of deficiency.  We disagree; respondent could not have disallowed petitioner's deduction of the flow-through items when respondent issued the notice of deficiency because petitioner had not yet deducted them.

Petitioner also contends that the fact that respondent had JRC and RSC Forms 1120S and Schedules K-1 for 2001 when respondent issued the notice of deficiency causes the notice of deficiency to be inadequate under section 7522(a). Petitioner gives no reason to support that contention. We conclude that petitioner's reliance on section 7522(a) is misplaced.

3. Conclusion

We conclude that petitioner bears the burden of proving he is entitled to deductions he claimed on his late return, and that he has not carried that burden. Thus, he may not deduct expenses that flowed through from JRC and RSC in 2001.

C. Whether Petitioner Is Liable for the Addition to Tax for Failure To Timely File His 2001 Return

1. Burden of Production

Section 7491(c) places on the Commissioner the burden of producing evidence that a taxpayer is liable for an addition to tax or penalty. Respondent has met the burden of production under section 7491(c) with respect to the addition to tax for failure to timely file a return under section 6651(a)(1) by showing that petitioner filed his 2001 return on March 2, 2005.

2. Whether Petitioner Had Reasonable Cause for Failure To Timely File His 2001 Return

Once the Commissioner meets the burden of production, the taxpayer must, in order to not be found liable for the addition to tax, produce evidence that the Commissioner's determination is

incorrect; e.g., that the failure was due to reasonable cause and not willful neglect. United States v. Boyle, 469 U.S. 241, 245 (1985); Higbee v. Commissioner, 116 T.C. 438, 446 (2001); H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995. Reasonable cause may exist if the taxpayer exercised ordinary business care and prudence but nevertheless could not file the return when due. United States v. Boyle, supra at 246; Bank of the West v. Commissioner, 93 T.C. 462, 471 (1989).

Petitioner contends that his illness was reasonable cause for failure to timely file his 2001 return. We disagree. A taxpayer's disability may constitute reasonable cause for failure to file returns. United States v. Boyle, supra at 248 n.6. However, a taxpayer does not have reasonable cause for failing to file tax returns if he or she was performing normal business operations. See Paradiso v. Commissioner, T.C. Memo. 2005-187; Kemmerer v. Commissioner, T.C. Memo. 1993-394; Bear v. Commissioner, T.C. Memo. 1992-690, affd. 19 F.3d 26 (9th Cir. 1994); Bloch v. Commissioner, T.C. Memo. 1992-1.

Petitioner operated JRC and RSC in 2002 and through the date of trial. He continued to work on a reduced schedule after his illness was diagnosed. He operated successful tax and accounting practices in New York and Florida from 2002 through 2004. He also (1) represented clients before the IRS; (2) traveled between his offices in Florida and New York; (3) signed all of JRC's

timely filed employment tax returns for 2002-04; (4) signed and filed annual reports with the State of Florida for his Florida corporation; and (5) received wages from JRC of $160,000 per year for his work in 2002, 2003, and 2004.

Petitioner testified that he had not prepared his or any taxpayers' returns in more than 30 years and that he had others at JRC and RSC prepare them. Petitioner does not explain why someone at JRC or RSC did not prepare his 2001 return. Hester prepared petitioner's 2000 return and apparently was available to prepare and timely file petitioner's 2001 return.

Petitioner contends that United States v. Isaac, 68 AFTR 2d 91-5094, 91-2 USTC par. 50,314 (E.D. Ky. 1991), affd. without published opinion 968 F.2d 1216 (6th Cir. 1992), "is virtually on 'all fours' with Petitioner's situation" and thus controls here. We disagree. In Issac, the District Court found that the taxpayer could not function during the 3 years for which the Commissioner contended he should have filed his income tax returns. Petitioner continued to function during the time at issue here. We conclude that petitioner lacked reasonable cause for his failure to file a return for 2001.

To reflect concessions and the foregoing,

<u>An appropriate order will be issued, and decision will be entered under Rule 155</u>.