T.C. Memo. 2015-227

UNITED STATES TAX COURT

TERRY GENE AKEY, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent<sup>*</sup>

Docket Nos. 18026-05, 18097-05,       Filed November 24, 2015.
28057-09.

---

<sup>*</sup>On October 8, 2014, this Court filed T.C. Memo. 2014-211 in these consolidated cases. On December 24, 2014, respondent notified the Court that petitioner had filed a petition with the U.S. Bankruptcy Court for the Central District of California on December 2, 2013, before the filing of our opinion but after the filing of the petitions in these cases. Pursuant to 11 U.S.C. sec. 362(a)(8) (2012), on September 1, 2015, we vacated our opinion and stayed the proceedings in this Court. On September 18, 2015, respondent informed the Court that the U.S. Bankruptcy Court had granted a discharge to petitioner on September 11, 2015, thereby terminating the automatic stay. <u>See</u> <u>id.</u> (c)(2). Accordingly, on September 30, 2015, we lifted the stay in these cases and issued to petitioner an order to show cause as to why our opinion should not be released and our decisions entered. Petitioner has not responded to that order. The order to show cause has been made absolute. This opinion therefore replaces T.C. Memo. 2014-211 unchanged.

**[*2]**     R disallowed P's costs of goods sold and deductions for expenses relating to his sports memorabilia activity and to his computer activity.  R disallowed those costs and deductions relating to the memorabilia activity on the grounds that P had failed to show that the activity was an activity engaged in for profit or, if it was, that P had substantiated those expenditures.  R disallowed the costs and deductions relating to the computer activity for lack of substantiation.

        1. Held:  R's denial of deductions is sustained for P's lack of substantiation and, with respect to the memorabilia activity, because P failed to show that it was "for profit within the meaning of section 183."

        2. Held, further, additions to tax sustained.

Terry Gene Akey, pro se.

Alexander D. DeVitis, Jeffrey D. Heiderscheit, Luanne S. Di Mauro, Richard T. Cummings, Priscilla A. Parrett, and Katherine Holmes Ankeny, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HALPERN, Judge:  Respondent determined deficiencies in, and additions to, petitioner's Federal income tax as follows:

| [*3] | | Additions to tax | |
|------|------------|------------------|------------------|
| | | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6651(a)(2) |
| 2001 | $43,988 | $10,831 | --- |
| 2002 | 36,268 | 8,160 | $4,715 |
| 2003 | 66,962 | 15,066 | 4,687 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

The parties have entered into a stipulation of settled issues, agreeing to the resolution of certain adjustments made by respondent and of other issues raised by petitioner. We need not further concern ourselves with those adjustments and issues. Other adjustments are purely computational and also do not require further discussion. During the tax (calendar) years in issue petitioner engaged in an activity involving sports memorabilia. We must determine whether that activity was engaged in for profit. We must also determine petitioner's entitlement to claim certain costs of goods sold and to deduct certain claimed business expenses. Respondent also made an adjustment to petitioner's 2001 income of $7,524 for unreported capital gains. Petitioner did not assign error to that adjustment in his petition, which ordinarily would mean that the adjustment is deemed conceded.

**[*4]** See Rule 34(b)(4); Funk v. Commissioner, 123 T.C. 213, 215 (2004). At trial, petitioner made a vague assertion that capital gains for tax year 2001 were still at issue in these cases. On brief, petitioner does not address that issue. If an argument is not pursued on brief, we may conclude that it has been abandoned. E.g., Mendes v. Commissioner, 121 T.C. 308, 312-313 (2003). We will, therefore, sustain respondent's 2001 capital gains adjustment. Also, in identifying the questions presented in his opening brief, petitioner discusses whether he received disability payments and whether he is an independent contractor. If he means that the wages he received from Emulex Corp. (Emulex) are disability payments and that he received them as an independent contractor, he is not timely in raising these issues. See Rule 41. Moreover, he reported those payments as wages on his 2001 return, and for 2002 and 2003 he conceded that those payments were wages. We see no issue to address. Finally, we must determine whether petitioner is subject to the additions to tax, on the basis of failure to timely file and on failure to pay the tax due.

**[\*5]**                                   FINDINGS OF FACT[1]

Introduction

Some facts are stipulated and are so found.  At the time he filed the petition, petitioner resided in Athol, Massachusetts.

Returns

Petitioner requested an extension of time until August 15, 2002, to file his 2001 Federal income tax return.  Petitioner filed that return, Form 1040, U.S. Individual Income Tax Return, for 2001 on July 24, 2003.

---

[1]Rule 151 governs briefs.  Rule 151(e) specifies the form and content of briefs, requiring, among other things, that a brief contain proposed findings of fact.  Rule 151(e)(3) provides in pertinent part that proposed findings of fact shall consist of concise statements of essential fact accompanied by "references to the pages of the transcript or the exhibits or other sources relied upon to support the statement."  At the close of the trial in these cases, the Court instructed the parties with respect to briefs, and, specifically, we directed petitioner to Rule 151(e)(3) and its requirement that proposed findings of fact be supported by references to the transcript, exhibits, or other sources.  Petitioner has in his briefs proposed findings of fact but has not accompanied those proposed findings by references to anything in the record.  We have received into evidence eight binders of exhibits, consisting of over 5,000 pages provided by petitioner.  Because petitioner has made it virtually impossible for the Court to verify any of his proposed findings that were objected to by respondent, and because he has violated Rule 151(e)(3), the Court, in making its findings, has disregarded all of petitioner's proposed findings to which respondent has objected.  See Van Eck v. Commissioner, T.C. Memo. 1995-570, 1995 WL 700553, at \*3.

**[\*6]** For 2002 and 2003, because he had not received returns from petitioner, respondent prepared substitutes for returns for him in accordance with his authority to do so provided by section 6020(b). Following respondent's sending petitioner notices of deficiency for those two years (based on the substitutes for returns), he received from petitioner Forms 1040 for those years. Respondent did not process those returns.

Other Years

Petitioner has a history of failing to file returns (1996 and 2010), and of filing untimely returns (1995, 1997, 1998, 1999, 2000, and 2004).

Petitioner's Employment

During the years in issue, petitioner worked full time as a quality assurance engineer for Emulex.[2] He received from Emulex wages of $150,763, $132,793, and $152,819 for 2001, 2002, and 2003, respectively. Petitioner had zero withheld from those wages for income tax, and he made no estimated tax payments towards his 2002 and 2003 income tax liabilities.

_____

[2]Apparently, until March 2, 2001, petitioner was employed by Giganet Inc., which, on that date, was acquired by Emulex. For simplicity, we will assume petitioner's employment by Emulex for all of 2001.

**[*7]** Petitioner's Schedule C Activities

Petitioner attached a Schedule C, Profit or Loss From Business, to the 2001 Form 1040 (2001 Schedule C). On that Schedule C, he described his principal business or profession as "[n]etwork consulting/testing, sales software/sports memor[a]bilia".

Petitioner attached two Schedules C to the 2002 Form 1040. On the first (2002 Schedule C1), he described his principal business or profession as "memor[a]bilia/software sales/consulting". On the second (2002 Schedule C2), he described his principal business or profession as "software consulting".

Petitioner attached two Schedules C to the 2003 Form 1040. On the first (2003 Schedule C1), he described his principal business or profession as "sales memorabilia". On the second (2003 Schedule C2), he described his principal business or profession as "software consulting, sales sports cards memorabilia".

Petitioner reported income, cost of goods sold, expenses, and net profits on those Schedules C as follows:

**[*8]**

| Schedule | Income | Cost of goods sold | Expenses | Net profit |
|---|---|---|---|---|
| 2001 Schedule C | $26,213 | $88,205 | $81,300 | -$143,292 |
| 2002 Schedule C1 | -0- | -0- | 19,529 | -19,529 |
| 2002 Schedule C2 | 23,168 | 103,052 | 17,842 | -97,726 |
| 2003 Schedule C1 | -0- | -0- | 20,983 | -20,983 |
| 2003 Schedule C2 | 34,879 | 115,511 | 26,510 | -107,142 |

The expenses that petitioner reported on the Schedules C were in the following categories: car and truck, commissions, depreciation, legal and professional services, rent or lease of business property, supplies, travel, meals and entertainment, utilities, and advertising. He reported no expense for insuring the inventory of his sports memorabilia business. Petitioner paid no wages to anyone during the years in issue.

Petitioner reported Schedule C profits of $1,662, $1,404, and $1,213 for 1997, 1998, and 1999, respectively. Petitioner reported Schedule C losses for 2004 through 2008.

In his software sales and computer and network consulting business, started in 1984, petitioner offered to customers technical services, expertise in computer networking, and software that he had developed.

[*9]   Petitioner has been engaged in the purchase and collection of sports-related collectibles since 1986.

## Business Practices

During the years in issue, petitioner did not have a bank account, an inventory system, an accounting system, or any books and records for his sports memorabilia activity.

## Respondent's Adjustments and Petitioner's Claims

For 2001, respondent disallowed $71,198 of the $88,205 cost of goods sold petitioner reported on the 2001 Schedule C.  Respondent also disallowed $72,094 of the $81,300 of Schedule C expense deductions petitioner claimed on the 2001 Schedule C.  For 2002, respondent would not reduce the deficiency he had determined (on the basis of his substitute for 2002 return) by the $103,052 of cost of goods sold and the $37,371 of expenses reported on the 2002 Schedules C1 and C2, nor, for 2003, would he reduce the deficiency he had determined (on the basis of his substitute for 2003 return) by the $115,511 of cost of goods sold and the $47,493 reported on the 2003 Schedules C1 and C2.

## Preparation of the Cases for Trial

Petitioner did not cooperate in the preparation of these cases for trial. Petitioner did not respond to respondent's attempt pursuant to Rule 91(a) to

**[\*10]** stipulate facts. Respondent then moved pursuant to Rule 91(f) to compel stipulation. Petitioner failed to respond timely to our order to show cause why the matters covered in the motion should not be deemed stipulated, and we made the order absolute. Petitioner also failed to respond to respondent's informal request for production of documents, and, on respondent's motion, we ordered petitioner to produce the requested documents.

OPINION

I.   Introduction

A.   Issues

Respondent argues, and we agree, that, during the years in issue, petitioner carried on two activities the financial results of which he reported on the Schedules C described above. Respondent accepts that petitioner's software sales and computer and network consulting activity (computer activity) was an activity engaged in for profit. He agrees that petitioner's losses attributable to that activity are deductible to the extent that petitioner can identify the cost of goods sold and expenses allocable to the activity and can substantiate that the claimed costs and expenses were actually incurred and, with respect to the expenses, were ordinary and necessary business expenses. Respondent believes that petitioner's second Schedule C activity, his sports memorabilia activity, was not an activity he

[*11] engaged in for profit, so that, pursuant to section 183, described infra, he may not deduct his losses from that activity in excess of his profits from the activity. Moreover, as with the computer activity, respondent believes that petitioner has failed both to identify the cost of goods sold and expenses allocable to the activity and to substantiate either.

Petitioner defends against the additions to tax on the grounds that he had reasonable cause for his tardiness.

### B. Burden of Proof

In general, the taxpayer bears the burden of proof. See Rule 142(a). Section 7491(a)(1) may shift the burden of proof to the Commissioner as to factual matters. However, section 7491(a)(1) applies only if, among other things, the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner for witnesses, information, documents, meetings, and interviews. See sec. 7491(a)(2)(A) and (B). A taxpayer seeking to shift the burden of proof pursuant to section 7491(a)(1) has the burden of showing that he has satisfied the section 7491(a)(2) preconditions. E.g., Allnutt v. Commissioner, T.C. Memo. 2004-239, 2004 WL 2339813, at *4.

Petitioner has failed to establish his compliance with the record maintenance and cooperation requirements that are prerequisites to shifting the

[*12] burden of proof to the Commissioner.  Accordingly, petitioner bears the burden of proof.

II.    Deficiencies in Tax

A.    Section 183 For-Profit Requirement

1.    Introduction

Section 183(a) provides:  "In the case of an activity engaged in by an individual * * *, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section."  In general, section 183(b) allows deductions with respect to an activity not engaged in for profit but only to the extent of the gross income from the activity.  Section 183(c) provides:  "For purposes of this section, the term 'activity not engaged in for profit' means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors to be considered when ascertaining a taxpayer's profit intent.  Those factors are:  (1) the manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in the activity may

[*13] appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned by the taxpayer, (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. No single factor is conclusive, however, and we may accord certain factors greater weight than others. See Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); Allen v. Commissioner, 72 T.C. 28, 34 (1979).

Petitioner testified that he had an honest objective of making a profit from his sports memorabilia activity. He also testified that he added other products and learned to grade card conditions in order to make the activity more profitable. In determining whether petitioner had the requisite profit objective to avoid the limitations of section 183, we give limited weight to his testimony and greater weight to the objective factors listed above. See Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), aff'd without published opinion, 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.

[*14] Taking into account the factors set forth in section 1.183-2(b), Income Tax Regs., and on the basis of the record as a whole, we conclude that the sports memorabilia activity was <u>not</u> an activity entered into for profit, and we so find.

### 2.  Application of the Profit Factors

Numerous factors lead us to conclude that petitioner had no objective to make a profit.

### a.  Manner of Carrying On Activity

Petitioner did not carry on this activity in a businesslike manner because he failed to maintain complete and accurate books and records and did not change his operating methods to increase profitability.  See Engdahl v. Commissioner, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs.  Nor did he maintain a separate bank account for his sports memorabilia activity. Notwithstanding the lack of evidence in the record, petitioner maintains that he kept all receipts of his expenses and maintained separate bank accounts for his business.  However, even if we were to find his testimony credible, we have previously recognized:  "The purpose of maintaining books and records * * * is to facilitate a means of periodically determining profitability and analyzing expenses such that proper cost saving measures might be implemented in a timely and efficient manner."  Burger v. Commissioner, T.C. Memo. 1985-523, 1985 Tax Ct.

[*15] Memo LEXIS 107, at *20, aff'd, 809 F.2d 355 (7th Cir. 1987). Petitioner undertook no such financial analysis. He did not prepare budgets, income statements, balance sheets, forecasts, or any other financial statement which would lead us to believe that he used his purported records to improve his bottom line. Moreover, although petitioner testified that he had a business plan for his memorabilia activity, he failed to provide evidence of it.

Petitioner contends that the expansion of his collectible memorabilia activity into other sports-related products and learning to grade card conditions demonstrates that he sought to improve the profitability of this activity during the years in issue. We disagree. We find no significant undertaking by petitioner to improve his overall profitability. On the contrary, according to the figures he reported on his return, cost of goods sold exceeds gross receipts for all the years in issue, which means that he continued to add to his inventory while consistently selling his items for a fraction of their cost without due regard for the losses he repeatedly occurred.

### b. Expertise

Moreover, petitioner has not carried out this activity with any expertise or in accordance with accepted business practices. See sec. 1.183-2(b)(2), Income Tax Regs. At trial, petitioner testified that he was an expert because he "consulted

**[*16]** industry price guides."  However, he conceded during cross-examination that collectors of sports cards and memorabilia, even those without a profit motive, also purchase price guides.  And while petitioner claims on brief that he "sought expertise advice from Industry Leaders on how to make the business line of sports related profitable several times a year", there is no evidence to support that claim.  Thus, aside from petitioner's self-serving testimony, he has provided no evidence to show that he is an expert (or that he has consulted experts) in the field of sports memorabilia.

c.    Time and Effort

Additionally, petitioner has not shown that he devoted much of his personal time and effort to carrying on this activity, nor did he withdraw from his full-time occupation to devote his time and effort to the sports memorabilia activity.  See id. subpara. (3).  Petitioner testified that he spent over 15 hours a day, every day, conducting his sports memorabilia activity, and, in his opening brief, he claims that he "did contribute * * * up to 12 hours a day 7 days a week on the sports related line of the business."  We find petitioner's assertions to be incredible, particularly in the light of the fact that petitioner was employed full time by Emulex during the years in issue.

**[*17]**                    d.      Expected Appreciation

Moreover, petitioner could not realistically expect that the assets used in the activity would appreciate. See sec. 1.183-2(b)(4), Income Tax Regs. He testified that "it's pretty much common knowledge that sports cards, rookie cards of superstars and Hall of Famers, increase in value", and he gave an example of a 1902 Honus Wagner card, stating that "in 2001, the card sold for $1.1 million. In 2002, that same card sold for $2.8 million." Although he admits that he does not own a 1902 Honus Wagner card (there is only one known to be in existence), he uses it as an example of how "sports memorabilia and sports cards do appreciate in value." Petitioner's expectation of future appreciation in his sports memorabilia collection is vague and highly speculative. He has not shown that he maintained an itemized list of the individual items in his inventory. In the absence of such a list, he had no apparent means of tracking the appreciation of individual items, making it impossible to determine which items to hold and which to sell.

Besides, we would expect that, if petitioner truly believed that his sports memorabilia activity would become profitable through the appreciation of his inventory, he would have insured his collection. He had no insurance expenses, suggesting that he was not concerned with protecting his investment. Such

**[*18]** behavior is inconsistent with investment for long-term appreciation.  See Rodriguez v. Commissioner, T.C. Memo. 2013-221, at *35.

e.  History

Additionally, petitioner has a history of substantial losses including the years in issue and minimal, if any, profits from his sports memorabilia activity. See sec. 1.183-2(b)(6), Income Tax Regs.  Petitioner testified that "[f]rom 1982 to 1999, I showed a profit on every year in the range of $12,000 to $18,000." However, he presented no evidence in support of that self-serving assertion. Petitioner did report minimal Schedules C profits of $1,662, $1,404, and $1,213 for 1997, 1998, and 1999, respectively, but failed to show that they were generated by the sports memorabilia activity as opposed to the computer activity.  Even if petitioner did realize an economic profit from his sports memorabilia activity, the minimal amount of this profit bears little weight in establishing a primary profit motive.  See id. subpara. (7) ("An occasional small profit from an activity generating large losses, or from an activity in which the taxpayer has made a large investment, would not generally be determinative that the activity is engaged in for profit.").

Petitioner argues that unforeseen circumstances resulted in his continuing losses.  Petitioner claims that the use of steroids in major league baseball greatly

[*19] reduced the value of his sports memorabilia collection. Petitioner has not shown, however, that his sports memorabilia activity would have been profitable if events beyond his control had not occurred. See Burger v. Commissioner, 809 F.2d at 360 n.8. We decline to find that the losses can be attributed to the use of steroids in sports.

### f. Financial Status

Finally, that a taxpayer has substantial income from sources other than the activity may indicate that the activity is not engaged in for profit. See sec. 1.183-2(b)(8), Income Tax Regs. That is particularly the case where losses from the activity generate substantial tax benefits or where there are personal or recreational elements involved. See id. subpara. (9).

During the subject years, petitioner earned a steady salary from Emulex on which he subsisted. This salary enabled him to pursue his longtime passion of collecting sports memorabilia while the reported losses from that activity were used to reduce his taxable income. See Giles v. Commissioner, T.C. Memo. 2005-28; sec. 1.183-2(b)(8) and (9), Income Tax Regs.

### 3. Conclusion: Weighing the Factors

None of the factors support the existence of a profit motive, and all relevant factors weigh against the existence of a profit motive. We conclude that petitioner

[*20] did not pursue his sports memorabilia activity during the years in issue with a predominant, primary, or principal profit objective. It follows that section 183 limits the allowable deductions to the amount of gross income generated from that activity.

      B.      <u>Whether Petitioner Is Entitled to Any of the Schedule C Deductions</u>

Even were we to find that petitioner engaged in the sports memorabilia activity for profit (for which deductions were allowable under section 162 or section 212(1) or (2)), we would still not allow petitioner's claimed costs of goods sold and deductions--either for that activity or for his computer activity--because petitioner has failed to substantiate both the fact of the expenditures themselves and, with respect to his claimed business deductions, that they were ordinary and necessary business expenses. <u>See</u> sec. 162(a).

In general, section 162 allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". When called upon by the Commissioner, a taxpayer must substantiate his expenses. <u>See, e.g.</u>, <u>Park v. Commissioner</u>, T.C. Memo. 2012-279, at *4; <u>see also</u> sec. 6001; sec. 1.6001-1(a), Income Tax Regs. Moreover, certain deductions, including those relating to travel, meals, and entertainment, are subject to heightened substantiation requirements. <u>See</u> sec. 274(d). In deciding whether a

[*21] taxpayer has satisfied his or her burden of substantiating a deduction, we are not required to accept the taxpayer's self-serving testimony. Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

In support of his claim that he has adequately substantiated all of his deductions, petitioner offers us eight five-inch-thick looseleaf binders containing thousands of pages of papers. Petitioner has ignored our specific instructions that he substantiate the total income from both Schedule C activities for each year, that he show the income allocable to the computer activity, that he show the income allocable to the sports memorabilia activity, and that he substantiate all of his expenses relating to each one of the activities. We need not (and will not) undertake the task of sorting through the voluminous evidence petitioner has provided in an attempt to see what is, and what is not, adequate substantiation of the items on petitioner's returns. Petitioner has failed to carry his burden of proving his claimed costs of goods sold and deductions. See Patterson v. Commissioner, T.C. Memo. 1979-362, 1979 Tax Ct. Memo LEXIS 162, at *7 (determining that the taxpayer failed to carry his burden of proving trade or business items in that he "has chosen to rely on what may be termed the 'shoebox method' of attaching photocopies of numerous cash register tapes and of similar bits of paper to his returns, without making any effort on the returns or on brief,

[*22] and only a slight effort in oral testimony, to link any item to a deductible trade or business expense transaction").  Therefore, we sustain respondent's disallowance of the claimed expenses.

III.    Additions to Tax

Section 6651(a)(1) provides for an addition to tax in the event a taxpayer fails to timely file a return (determined with regard to any extension of time for filing) unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect.  The addition equals 5% of the amount required to be shown as tax on the delinquent return for each month or fraction thereof during which the return remains delinquent, up to a maximum addition of 25% for returns more than four months delinquent.  Id.

Section 6651(a)(2) imposes an addition to tax when a taxpayer fails to pay the amount of tax shown on a return by the prescribed date unless the taxpayer shows that such failure is due to reasonable cause and not due to willful neglect.  The addition equals 0.5% of the tax for each month or fraction thereof during which the tax remains unpaid, up to a maximum addition of 25%.  Under section

**[\*23]** 6651(g)(2), a substitute for return prepared pursuant to section 6020(b) is treated as the taxpayer's return for purposes of section 6651(a)(2).[3]

With respect to both the section 6651(a)(1) and (2) additions to tax, respondent bears the burden of coming forth with evidence that imposition of the addition is appropriate. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001); see also sec. 7491(c). The parties have stipulated (and we find) that petitioner failed timely to file his tax returns for the years in issue. They have also stipulated (and we have found) that petitioner had zero withheld from his Emulex wages for 2002 and 2003 and that he made no estimated tax payments towards his 2002 and 2003 income tax liabilities (as determined by respondent). Accordingly, we conclude that respondent has produced sufficient evidence to show that the section 6651(a)(1) and (2) additions to tax are appropriate, unless petitioner proves that either or both of his failure to file and failure to pay were due to reasonable cause and not due to willful neglect.

---

[3]We note in passing that, while a properly made substitute for return is necessary before a sec. 6651(a)(2) addition to tax for failure to pay the tax shown on return can be imposed on a nonfiler, a substitute for return is not a prerequisite to the Commissioner's determining a deficiency in tax. E.g., Roat v. Commissioner, 847 F.2d 1379, 1381-1382 (9th Cir. 1988) ("Deficiency procedures set out in the Internal Revenue Code * * * do not require the Commissioner to prepare a return on a taxpayer's behalf before determining and issuing a notice of deficiency."); accord Watson v. Commissioner, T.C. Memo. 2007-146, aff'd, 277 Fed. Appx. 450 (5th Cir. 2008).

**[\*24]** A failure to file is due to reasonable cause if a taxpayer "exercised ordinary business care and prudence and was nevertheless unable to file the return within the prescribed time".  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.; see also United States v. Boyle, 469 U.S. 241, 246 (1985).  A failure to pay tax will be considered to be due to reasonable cause if the taxpayer exercised ordinary care and prudence in providing for her tax liability but was unable to pay.  See sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect is interpreted as a "conscious, intentional failure or reckless indifference."  Boyle, 469 U.S. at 245.

In part, petitioner argues that he was unable to file and unable to pay his tax on account of illness.  A taxpayer's disability may constitute reasonable cause for failure to file returns.  Id. at 248 n.6; see, e.g., Rappaport v. Commissioner, T.C. Memo. 2006-87, 2006 WL 1083434, at \*5.  At trial, in response to the Court's inquiry as to his defense to the additions to tax, petitioner attributed his nonfiling to the fact that "I had major health problems starting in November of 2000 and continued on as total disability until February of 2002."  Petitioner has provided limited substantiation of his medical problems.  He has proffered a handwritten note from a doctor stating that he had surgery on November 1, 2001, and could not return to work until December 20, 2001, and an email stating that petitioner was not at work from October 25, 2001, through January 20, 2002.  Those documents

[*25] alone do not explain why petitioner was unable to timely file his 2001, 2002, and 2003 tax returns.  Because of extensions, his return for tax year 2001 was not due until August 15, 2002, leaving him sufficient time in which to timely file that return.  The documents certainly do not explain why petitioner was unable to timely file his 2002 and 2003 tax returns.  Further weighing against petitioner is the fact that he is a chronic late filer.  See Judge v. Commissioner, 88 T.C. 1175, 1189-1191 (1987) (finding history of delinquency relevant to lack of reasonable cause for late filing).  And while we do not minimize the difficulties that may have arisen on account of his illness, the fact remains that petitioner remained gainfully employed, earning significant income during 2001 through 2003, and, apparently, was able to attend to business matters and to his collectibles activity during the period.

Petitioner also avers that he was unable to timely file his tax returns for the years in issue because a break-in at his warehouse in November of 2000 left his entire warehouse in disarray and he was therefore unable to complete an inventory check required for filing.  That testimony alone does not explain why petitioner was unable to timely file his 2001, 2002, and 2003 tax returns, all of which were due well after the purported break-in.  On the basis of the foregoing, we hold that petitioner did not have reasonable cause for his failure to timely file.  Accordingly,

**[\*26]** we sustain respondent's determination of the section 6651(a)(1) addition to tax for all the years in issue.

Petitioner makes the same claim of reasonable cause with respect to the section 6651(a)(2) addition to tax as he does with respect to the section 6651(a)(1) addition, viz, that he had major health problems and that the break-in at his warehouse prevented him from conducting an inventory check. But reasonable cause for purposes of section 6651(a)(2) depends upon whether the taxpayer, notwithstanding the exercise of ordinary business care and prudence, was in fact unable to pay or would suffer undue hardship if payment were made. E.g., Bray v. Commissioner, T.C. Memo. 2008-113; sec. 301.6651-1(c)(1), Proced. & Admin. Regs. Petitioner offered no evidence showing the foregoing. Accordingly, we sustain respondent's determination of the section 6651(a)(2) additions to tax for the years in issue.

Decisions will be entered under

Rule 155.